Saul S. Stkbit, J.
Motions number 147 and 148 of March 10, 1971 are consolidated herein for the purposes of disposition.
This is an article 78 proceeding whereby petitioners seek to enjoin respondent, the Parks, Recreation and Cultural Affairs Administrator of the City of New York, from issuing a permit to the Metropolitan Museum of Art (hereinafter referred to as the “Museum”) for the erection of an addition to the Museum to be known as the “ Lehman Pavilion ”. This addition is to be constructed with private funds and is intended as a gift to the City of New York. The Pavilion will be built on 82nd Street between the west facade of the Museum and the Central Park Drive. Significantly, as hereinafter discussed in detail, this location constitutes part of a parcel of land in Central Park heretofore specifically designated for Museum purposes in a lease dated December 24, 1878 (between the appropriate City agency and the Museum), whereby this world-famous art institution now occupies its present buildings. The lease agreement between the parties was executed pursuant to the requisite enabling State legislation (L. 1876, ch. 139). It is petitioners’ contention herein, however, that the Museum has no right to enlarge its premises, as contemplated by the construction of the Lehman Pavilion, without prior approval of the Board of Estimate of the City of New York.
Before discussing the merits of petitioners’ application, in view of the nature and subject matter of this proceeding, I deem it advisable first to dispose of the various affirmative defenses interposed by respondent. I find no merit to respondent’s argument that petitioners lack standing to institute this lawsuit. While the court does not intend to become embroiled in the controversy concerning the cultural aspects or community benefit of the gift here involved, it cannot be denied that the subject matter of this proceeding is permeated with public interest. Unquestionably, the relief sought by the parties is of abiding concern to all of the people of this city and, as such, there need be no express showing of personal interest or further proof that petitioners, individually, are specifically or specially aggrieved parties (Matter of Procaccino v. Stewart, 60 Misc 2d 551, rev. on other grounds 32 A D 2d 486, affd. 25 N Y 2d 301). Likewise, contrary to respondent’s contention, injunctive relief, such as that sought by the petition herein, is obtainable in an article 78 proceeding (see Matter of O’Reilly v. Grumet, 308 N. Y. 351; *1061 Matter of Policemen’s Benev. Assn. v. Board of Trustees, 21A D 2d 693; Matter of Di Maggio v. Lindsay, 53 Misc 2d 209; see, also, CPLE 7805).
I also find there is no merit to the alleged defense of laches. The record clearly shows that petitioners instituted this proceeding on January 29, 1971, only eight days after acceptance by the Mayor of the City of New York of the contemplated gift and approximately nine days after respondent’s public announcement of his intention to issue the permit which is the subject matter of this litigation. It is obvious, therefore, that petitioners have been most diligent and assiduous in asserting their claimed rights.
As indicated above, it is petitioners’ contention that various sections of the New York City Charter, particularly sections 229 and 384, mandate prior approval by the Board of Estimate before the City of New York may lease “additional” park property to the Museum. They also urge that an alleged 6 i City map change” will result from the proposed building, thereby requiring approval of the City Planning Commission (N. Y. City Charter, § 199). In support of their position, petitioners rely, principally, upon a formal 1952 opinion of the Corporation Counsel of the City of New York and their argument that41 every single prior expansion of the Museum * # * has been submitted to an official body such as the Board of Estimate for its prior approval ’ ’.
Petitioners, in my opinion, have disregarded significant changes in the New York City Charter, adopted in 1963, subsequent to the opinion relied on (supra). By section -8 (subd. a) thereof, the power to accept gifts on behalf of the City of New York was, in effect, transferred from the Board of Estimate to the Mayor. It is apparent that such transfer of power would, for all practical purposes, be obviated and nullified if petitioners’ interpretation of the afore-mentioned sections of the Charter were adopted by the court and Board of Estimate approval was still determined to be necessary herein.
Section 229 of the New York City Charter relied on by petitioners, provides that: ‘ ‘ Any owner of real property or any other person interested may apply to the board of estimate to authorize an improvement referred to in item (d) of subdivision one of paragraph a of section two hundred eleven hereof, not included in the capital budget ” (emphasis added). Among the improvements set forth in subdivision 1 of section 211 are those affecting “ Streets and parks
Contrary to petitioners’ interpretation thereof, however, an analysis of the legislative history of section 229 clearly demon *1062 strates that its permissive provisions (supra) were not intended to deal with 1 ‘ improvements ’ ’ and construction such as that contemplated here by the Museum (which are intended to be of benefit to the entire city).
Initially, however, it is noteworthy that section 229 does not preclude other methods of making improvements in the city, such as by way of a gift from one of its citizens or some other individual, as is the case here (see General City Law, § 20, subd. 3; § 23). Moreover, the permissive language of this statute cited by petitioners in support of their argument must be contrasted with that of other City Charter sections which set forth mandatory and exclusive procedures, such as section 384 thereof. This section, also cited by petitioners, deals with the disposition of city property (as opposed to the acquisition of property) and, therefore, is inapplicable here (infra).
Section 229 has nothing to do with the proposed Museum addition. The apparent intention of the drafters in including this provision in the Charter was to insure the possibility of continued construction by private developers, with their own funds, of local improvements such as streets, curbing, lighting and sewers, previously assessable to those deriving special benefit from them (see 1963 Report of the Board of Statutory Consolidation of the City of New York to the Legislature of the State of New York). Obviously, therefore, this law is not applicable to the subject Museum improvement which is of benefit to the city as a ivhole and which has never been within the scope or intendment of such assessments (see Metropolitan Life Ins. Co. v. Durkin, 301 N. Y. 376; Cooper Union for the Advancement of Science and Art v. City of New York, 272 App. Div. 438).
It is also noteworthy that while research by the court has revealed no prior specific judicial interpretation of section 229, two reported eases involving challenges to ‘1 park gifts ’ ’ have restricted the powers of the Board of Estimate with respect thereto to its budgetary functions only. The acceptance of such gifts have been viewed therein by the courts as a “Mayoral function ” rather than that of the Board of Estimate, as petitioners, in substance, urge here (see McNicholas v. City of New York, N. Y. L. J., July 5,1967, p. 12, col. 3; Davis v. City of New York, 50 Misc 2d 275). It necessarily follows, therefore, that inasmuch as the Mayor of the City of New York has accepted the gift of the Lehman Pavilion, within the scope of his Charter powers, there is no need for the Board of Estimate approval enunciated in section 229 of the Charter.
*1063 Petitioners’ reliance on a 1952 opinion of the Corporation Counsel which indicated a contrary view, namely, the need for prior Board of Estimate approval, is wholly misplaced at this time. The power to accept gifts on behalf of the city is not specifically vested in any particular body by the City Charter. Admittedly, prior to the adoption of the current Charter (in 1963), all residual powers of the city then vested in the Board of Estimate (see, N. Y. City Charter of 1936, § 70). In this regard, it is well-settled law that the right to accept a gift on behalf of the city is a ee residual power ” (see 795 Fifth Ave. Corp. v. City of New York, 40 Misc 2d 183, affd. 20 A D 2d 850, affd. 15 N Y 2d 221). In 1963, however, as hereinabove stated, the new City Charter, subdivision a of section 8, vested these residual powers in the Mayor, thereby transferring the right to accept gifts to the city from the Board of Estimate to him. This is the crux of the current issue, the effect of which has been unduly minimized or totally ignored herein by petitioners.
I further find that petitioners have improperly construed the relevant provisions of the lease here involved between the then Department of Public Parks of the City of New York and the Museum {supra). Chapter 139 of the Laws of 1876, authorized this department to make and enter into a contract with the Museum for the occupation by it of the buildings erected “ or to be erected ” on a specified parcel of land in Central Park. Thus, this enabling legislation, in effect, conclusively established that the Museum was a proper park use (see Matter of Central Parkway, 140 Misc. 727; see, also, N. Y. City Charter § 2003, subd. 2, par. [i] [which presently vests the Parks, Recreation and Cultural Affairs Administration with jurisdiction over museums in parks]). It follows, therefore, that contrary to petitioners’ argument, since the Lehman Pavilion must be deemed a proper park use, it is within the power of respondent, as Administrator, to permit its construction (795 Fifth Ave. Corp. v. City of New York, supra).
Moreover, an analysis of the subject lease, dated December 24, 1878, also establishes that the Museum clearly has the right to occupy the entire parcel described in this document (see Rasch, Landlord and Tenant and Summary Proceedings, § 830; Doyle v. Lord, 64 N. Y. 432). Petitioners’ claim that the lease confined the Museum to the building then under construction is contradicted not only by the enabling State legislation, but by the terms of the lease agreement itself (supra). If any logical meaning is to be assigned to the provisions of both the enabling legislation and this lease (supra), contrary to petitioners’ contentions herein, it must be held that the entire Museum area *1064 described therein was deemed appropriate and intended for subsequent expansion and use for Museum facilities, as now proposed by the addition of the Lehman Pavilion.
Thus, inasmuch as the contemplated Pavilion is to be erected on the parcel already conveyed for Museum purposes pursuant to proper enabling legislation, there can be no doubt the Museum may lawfully occupy such premises. The Mayor has accepted this gift (within the scope of powers conferred on him by the new Charter), and the city’s Art Commission has given its approval, as required by section 854 of the Charter. Nothing further is mandated by applicable law therefor before respondent may issue the subject permit.
I do not disagree with petitioners’ claim that the grant to the Museum was not one of land itself. This, however, is not sufficient to support its application here. In this regard, it cannot be seriously argued that it was the intention of the Legislature or the drafters of the lease agreement to grant to the Museum the unfettered right to use the park land in its sole discretion. Thus, the demise encompassed the “buildings and appurtenances ” alone and the Museum, obviously, would have the use of the stated portion of park land only as the buildings were erected or “to be erected” thereon (supra). The Legislature, as stated, designated the appropriate Museum area and there is no dispute that the Lehman Pavilion will be constructed well within these boundaries. No “ additional ” land, therefore, is, in fact, being conveyed by the city for this purpose.
All parties concerned with this litigation must recognize as an established fact that the original lease clearly contemplated and was intended to cover subsequent expansions by the Museum. The full area designated for museum use is set forth, unambiguously, in the first ‘ ‘ whereas ’ ’ clause of this agreement and the prior history of the development of the Museum, as it now exists, obviously supports this conclusion.
Thus, in my opinion, there is no merit in petitioners ’ argument that the city, in effect, is now disposing of a new leasehold interest in the land on which the Lehman Pavilion will stand. On the contrary, the city, in fact, is acquiring a valuable building thereon. Therefore, inasmuch as the ‘ ‘ alienation ’ ’ of the park land itself was authorized by the Legislature, sections 383 and 384 of the Charter, also cited by petitioners, are inapplicable (supra).
Similarly, the fact that the city is acquiring rather than disposing of property distinguishes this matter from the cases cited by petitioners in their submitted memorandum. It is also *1065 another critical factor which renders petitioners’ reliance on the 1952 opinion of the Corporation Counsel unwarranted.
In conclusion, it appears from the voluminous papers submitted by the parties that the situation here involved actually concerns a matter as to which the Legislature has authorized specified city officials to make a determination. The making thereof, whether wise or unwise, is simply an act of government which, in the absence of proof of a “ total lack of power ’cannot be judicially restrained (Kaskel v. Impellitteri, 306 N. Y. 73; 795 Fifth Ave. Corp. v. City of New York, supra; Green v. Heckscher, N. Y. L. J., July 23, 1970, p. 2, col. 4 [Sup. Ct., N. Y„ County, Spec. Term, Pt. I]). The wisdom and feasibility of this and similar determinations by respondent and the Mayor of the City of New York, therefore, may be “ reviewed ” properly only through the political and legislative process and not by judicial fiat.
Giving due consideration to the foregoing and to all of the proof before me, therefore, I hold that respondent has clearly established that the Museum expansion here does not constitute a disposition of city property and, therefore, does not require Board of Estimate or City Planning Commission approval on that or any other ground.
Accordingly, the application is denied and the petition is dismissed.