■ EDWARD H. TUCK et al., Appellants, v. AUGUST HECKSCHER, as Administrator of the Parks, Recreation and Cultural Affairs of the City of New York, Respondent.— Judgment, Supreme Court, New York County, entered on March 29, 1971, affirmed, without costs and without disbursements, on the opinion of STREIT, J. at Special Term (65 Misc 2d 1059). Concur — Stevens, P. J., Nunez and McNally, JJ.; Capozzoli and Kupferman, JJ., dissent in the following memoranda: In the face of the analysis by the court at Special Term, to sustain the appellants' well constructed legal argument requires many legal hurdles to be vaulted, not the least of which is an interpretation of the original 1878 lease for the Metropolitan Museum of Art as to whether it covers the proposed construction nearly 100 years later. However, the public interest clearly requires a definitive ruling by the Court of Appeals. Section 67 of the City Charter, in part, provides as follows: "§ 67. Responsibilities of the board. — The board shall exercise the powers and perform the duties imposed upon it by this charter, and shall: 1. Grant leases of city property and concessions for the use of city property and enter into leases of property to the city for city use." Section 384, insofar as it pertains to the issues raised in this proceeding, provides as follows: "a. No real property of the city may be sold, leased, exchanged or otherwise disposed of except with the approval of the board of estimate and as may be provided by law unless such power is expressly vested by law in another agency". The objection which is presented by the appellants relates to the failure of the respondent to submit plans for the proposed Lehman Pavilion to the Board of Estimate for its approval. They argue that a dangerous precedent would be established if, by calling the proposed encroachment to the park a gift, the necessary approval by the Board of Estimate could be by-passed. It seems clear that the proposed addition will stand on about a 38,000 square foot area of Central Park. Therefore, what is being discussed is not the mere offer and acceptance of a gift, but rather, whether the clear mandate of the law is being avoided, and in effect the grant of a leasehold or a concession to use park property. In support of the contention of the petitioners-appellants that the latter is true, they assert that there have been no additions to the Museum in its entire history without the specific authorization of the Board of Estimate, regardless of whether such additions were financed privately or by the public. This is not contradicted by the

respondent. In 1952, the opinion of the Corporation Counsel was sought with respect to whether Board of Estimate approval was required before the Museum could enlarge an existing lecture hall, even though private funds were being used for the purpose. The Corporation Counsel advised as follows: "It is my opinion that the Board of Estimate must consent to action by the Museum to enlarge and reconstruct the lecture hall, using its own funds, before the Museum can proceed with the work." The contention of the respondent that the construction of the proposed Lehman Pavilion, without the approval of the Board of Estimate, is expressly authorized under the terms of the 1878 lease is untenable. It seems to me that the preamble of the lease, relating to the general area of the park in which the Museum was to be located, was inserted for the purpose of identifying the general area of the park where the construction of the Museum was to take place. This cannot be read as a deed, lease or as a permit authorizing the Museum to erect other buildings in that area, almost 100 years later, without the consent of the city. There was no land demise, either by deed, lease or otherwise. What was demised was the building, not the adjoining land. There is also the question of whether the agreement, entered into between the Lehman Foundation and the Museum, encroaches in any way on the right of the city to control the use of the land in question. One of the objections which the petitioners raise is the fact that the agreement between the Museum and the Lehman Foundation can be amended without the consent of the city. To what extent this would impair the city's right to control its own land should be inquired into. It is difficult to call this proposed building a gift if its use, etc., can be controlled by the parties to the agreement without the city having anything to say about it. Serious questions are also raised as to the financial burden, which may be imposed upon the Museum as a result of the addition, and whether this would result in increased subsidies by the city. The petitioners-appellants point to the fact that about 25% of the expenses of the Museum are paid by the city. The agreement provides that expenses for air conditioning, heat and other utilities are not covered by the funds provided by the Lehman Foundation. In addition, a percentage limitation is placed upon the overhead expenses which may be charged to the Lehman Foundation. After a careful review of this record I cannot agree that we are dealing with a simple offer of a gift. The situation is much more complicated. The city's finances are certainly involved, if not now, surely later. In fact, the Museum has already called attention to its tight financial condition. It is a matter of public record that the Museum has been operating at a serious deficit, for the year ending June 30, 1970. Adding to its burdens is sure to make its financial condition worse. I have no doubt whatever as to the sincerity of all parties involved in the transaction and their earnest desire to give to the people of our city a valuable and unique gift. Certainly their good faith is beyond question. However, my conclusion is reached as a result of my understanding of the law as it is written in the Charter, which, I believe, governs the matter. I find no authority for an exception and it would be a dangerous precedent to provide one for this case. Frankly, I cannot understand the reluctance to have the Board of Estimate pass on the matter. Especially in this era of tight budgets, if the city's finances are involved, and they seem to be, then surely the proper representatives of the people should pass upon the problems presented. For the reasons given I dissent and vote to reinstate the petition.