Chief Judge Fuld.
The Metropolitan Museum of Art seeks to build a privately financed addition to its present structure, to be known as the Robert Lehman Wing. We are called upon to decide whether its construction requires the authorization of New York City’s Board of Estimate.
By legislation, enacted in 1876 (L. 1876, ch. 139), the Department of Public Parks of the City of New York was “ authorized and directed ” to enter into a lease with the Metropolitan Museum of Art under which the museum would occupy “ buildings erected or to be erected on that portion of the Central park, in the city of New York * * * bounded on the west by the [park] drive, on the east by the Fifth avenue, on the *292 south by a continuation of Eightieth street, and on the north by a continuation of Eighty-fifth street”. (Emphasis supplied.) Two years later, in 1878, acting pursuant to that enabling statute, the Park Department signed a lease with the museum. After reciting, first, the Park Department’s authorization to enter into a lease with the museum “for [its] occupation * * * of the buildings erected, or to be erected on that portion of Central Park described in the statute and, second, the near completion of “ [a] building contemplated” by the statute, the document went on to provide that the department ‘ ‘ has granted and demised and let * * * unto the- [museum] the said buildings and the appurtenances thereunto belonging, to have and to hold the same, as long as the [museum] shall continue to carry out the objects and purposes defined in its charter”. (Emphasis supplied.)
As already indicated, the Metropolitan Museum now desires to erect an addition, to be called the Lehman Wing, to house a priceless treasury of art, collected by Robert Lehman during his lifetime. Described as “ One of the * * * finest private collections of European art” and sought by almost every museum in the world, it is valued at 100 million dollars. Intent on keeping the collection intact and available to the widest possible public, Mr. Lehman decided in 1967 to leave it to the Metropolitan Museum provided that it build an addition to hold it and accept certain other conditions to insure its being kept together “forever.” In January of 1970, a year after his death, the museum and the Robert Lehman Foundation by its president, Edwin L. Weisl, Esq.— who had been Mr. Lehman’s lawyer and close friend—executed an agreement. By its terms, the gift was conditioned upon the erection of a separate wing, to be known as the Lehman Wing and used solely to house the collecttion. It was to be built with private funds, chiefly those of the Foundation, which was also to pay for most of the operating expenses.
The City Art Commission approved the contemplated addition and the mayor accepted it as a gift to the city. The respondent Heckscher then announced the approval of his department, the Parks, Recreation and Cultural Affairs Administration, noting that it was part and parcel of a long-needed comprehensive architectural plan for the museum and that he *293 was prepared to ‘ ‘ approve ’ ’ a permit for the construction of the Lehman Wing.[1]
The two petitioners—presidents, respectively, of the Parks Council and of the Municipal Art Society—thereupon objected to the addition as an encroachment upon park land and instituted the present article 78 proceeding to enjoin the respondent from issuing the permit without prior authorization of the Board of Estimate. The court at Special Term, on application of the respondent, dismissed the petition, and its judgment has been affirmed by the Appellate Division. It was Special Term’s view that, since the enabling legislation of 1876 established that the museum was a proper park use and since the addition to it, the Lehman Wing, must likewise be deemed such a use, it followed that “it is within the power of respondent, as Administrator, to permit its construction ” (65 Misc 2d 1059, 1063). Moreover, added the court, since the contemplated expansion “ does not constitute a disposition of city property * * * [it] does not require Board of Estimate or City Planning Commission approval” (p. 1065).
It is manifest from the lease entered into in 1878 that it was the Department of Public Parks, as lessor, and not the Board of Estimate, which was to decide whether the museum’s expansion upon the portion of park land designated would carry out the museum’s “ objects and purposes ”. Indeed, this understanding was reinforced, four years later, by a statute which recited that the “ department of public parks is hereby authorized and directed to continue the contract with the Metropolitan Museum of Art for [its] occupation * * * of the buildings erected or to be erected ” on the land described in the lease (L 1882, ch. 410, § 697).[2]
*294 Thus, nearly 100 years ago, the site on which the Lehman Wing is to stand was, as it were, conveyed and set aside for buildings to be erected for museum purposes—unquestionably a proper park use—pursuant to State legislation. More particularly, the land was, in so many words, reserved not only for the first museum building to be constructed but also for ‘ ‘ buildings * * * to be erected on that portion of the Central park ’ ’, bounded on the west by Park Drive, on the east by Fifth Avenue, on the south by 80th Street and on the north by 85th Street. The Lehman Wing, to be located in the area of 82nd Street, between the museum’s west facade and Park Drive, is well within those boundaries.[3]
It follows, therefore, that there is no substance to the petitioner’s argument either that the city did not intend the museum to occupy any park land other than that upon which the original building was constructed or that acceptance of the Foundation’s offer entailed a ‘ ‘ disposition ’ ’ of city-owned property requiring Board of Estimate approval. The land having been set aside *295 for museum purposes in the 1870s, the Foundation’s offer, subject to acceptance and approval by the appropriate city officials, constitutes a gift to the city of the Lehman Wing. In short, as the courts below concluded, the expansion of the museum, by the erection of an addition to it, does not constitute a disposition of city property and, accordingly, Board of Estimate approval is not needed.
The petitioners also contend that the many conditions which the Foundation attached to its offer of the collection and of the wing make it “more than a mere ‘gift’”. In view of that, they urge that Board of Estimate approval is required because “ the consequence of the transaction is to give the donor use and control over a portion of parkland.” For instance, they declare, even though the Lehman Wing will be a city-owned building on public land, it may not be altered without the consent of the Foundation and must continue to house only the Lehman collection “in solido and in perpetuity ’ ’. The argument lacks merit. As we have already indicated (supra, p. 293, n. 2), the Parks Administrator may accept ‘ ‘ conditions * * * prescribed by the grantors or donors ’ ’ of real property, including museums (City Charter, § 2003, subd. 2, par. [i]), and this is precisely what he has done here. Moreover, although it is true that the agreement affects the Foundation’s gift of the art collection to the museum, it does not affect the museum’s gift of the Lehman Wing to the city, since the latter, not being a party to the agreement, is not bound by its provisions. Its interests, however, will be fully protected, once the wing is built, by the terms of the lease between it and the museum.
The gift of the Lehman Wing required the approval of only those agencies concerned with its appropriateness and suitability for the use contemplated—in this instance, the City Art Commission and the Parks Administrator whose approval had already been given. Although no particular official or body is expressly designated as the party with power to accept gifts on the city’s behalf, study of the relevant provisions of the city charter, as well as its legislative history, indicates that such power — previously vested in the Board of Estimate by the 1936 charter (see 795 Fifth Ave. Gorp. v. City of New York, 15 N Y 2d 221, affg. 20 A D 2d 850, affg. 40 Misc 2d 183, 184) *296 — is now vested in the mayor (City Charter, § 8, subd. a).[4] Since he accepted the gift, the respondent, requiring no further approval and acting under the powers vested in him by charter (§ 2003, subd. 2, par. [j]) and regulation (Park Rules and Regulations,- July 15, 1970, § 11a), was fully authorized to issue the permit for the construction of the Lehman Wing.
This leaves for consideration the petitioners’ reliance on several provisions of the charter — sections 67, 199, 229 and 384—to support their position that there must be Board of Estimate approval. We may dispose of sections 67 and 384 by noting that they relate solely to city property not previously committed or set aside for a public purpose and that the city in this case is acquiring a building on land actually leased more than 90 years ago to the museum, pursuant to legislation, for museum purposes. As to section 199—which provides that “no * * * change in the city map shall be authorized ” without Board of Estimate approval—it is enough to say that it has nothing to do with this case; since it will not be necessary to show the Lehman Wing on the map, its erection will not require a map change. And, finally, with respect to section 229—which provides for application to the Board of Estimate for authorization to improve certain specified property—we need but point out that, quite apart from the fact that the provision is explicitly permissive in its wording, it may not be read to preclude other methods of making improvements, such as by way of a gift from its citizens or others. Furthermore, as the court at Special Term observed (65 Misc 2d, at p. 1062), the statute’s legislative history demonstrates that its provisions were not designed “ to deal with ‘ improvements ’ and construction such as that contemplated here by the museum (which are intended to be of benefit to the entire city).” (Emphasis in original.)
The order appealed from should be affirmed, without costs.
Judges Burke, Scileppi, Bergan, Breeder, Jasen and Gibson concur.
Order affirmed.

. In the course of his statement, the respondent pointed out that the collection represents an “ invaluable gift to [the] museum ”, including as it does “ paintings, drawings and bronzes beyond price, and on a scale which perhaps no private collector will ever duplicate. * * * It should be a matter for common rejoicing that so splendid a collection has been made available and will now be appropriately housed, cared for and displayed through private generosity.”

. The power formerly vested in the Public Parks Department is now reposed in the Parks, Recreation and Cultural Affairs Administration. The New York City Charter lists among its functions the maintenance of “ buildings and institutions now or hereafter erected or established in any park ” and the performance *294 of “existing contracts with corporations or institutions for the construction and maintenance of such buildings and institutions” ('§ 2003, subd. 2, par. [f]), as well as the “ management, direction and control of all real or personal property granted, devised, bequeathed or conveyed to the city for the * * * establishment or maintenance * * * of * * * museums * * * and upon such trusts and conditions as may be prescribed by the grantors or donors thereof and accepted by the administrator ” (§ 2003, subd. 2, par. [i]).

. The following diagram, which does not purport to be precise, illumines the situation. The land covered by lease and legislation is shown by a broken line, the space covered by the museum as it at present exists, by a single solid line and the proposed Lehman Wing, by double solid lines:

. Section 8 (subd. a) of the charter effected a transfer to the mayor of the residual powers formerly granted to the Board of Estimate (1936 City Charter, § 70), by providing that the mayor “shall exercise all the powers vested in the city, except as otherwise provided by law.”