Daniel T. Cavarello, Esq. Informal Opinion No. 2009-1 Town Attorney Town of Tonawanda 2919 Delaware Avenue Kenmore, New York 14217
Dear Mr. Cavarello:
You have requested an opinion as to whether the town of Tonawanda may, without legislative approval, construct a public library facility on land held by the Town as parkland. You have further asked whether the Town may hold a public referendum on the construction of the library facility. As explained below, we conclude that the Town should seek alienation legislation and that an answer to the question of whether a referendum is authorized depends on the length to maturity of the bonds used to finance the library construction.
I. Construction of Library Facility on Parkland
Real property held by a municipality as parkland is impressed with a public trust and may not be alienated or used for non-park purposes for an extended period without legislative approval. Friends of VanCortlandt Park v. City of New York, 95 N.Y.2d 623 (2001). As your letter suggests, the question you have presented is whether construction of a library in the town park would be considered a "park purpose."
We are not aware of any case in which a New York court has decided whether construction of a public library on parkland is a use consistent with park purposes. An answer to your question must therefore be found in general principles stated in cases involving analogous facilities. *Page 2 
In Williams v. Gallatin, 229 N.Y. 248 (1920), the issue was whether a lease of an existing building located in a park to a not-for-profit organization for the purpose of establishing a museum relating to public safety and sanitation was consistent with park purposes. The Court of Appeals held that it was not, explaining that buildings and other improvements are consistent with park purposes only if they "facilitate free public means of pleasure, recreation, and amusement and thus provide for the welfare of the community." Id. at 254. Strictly utilitarian structures, such as schools and courthouses, though serving worthy purposes, have no connection with park purposes and thus are not permitted absent "legislative authority plainly conferred."Id. at 253. Although the Court acknowledged that the museum in question was a worthy purpose and beneficial to the public, it was not consistent with the park purpose of providing "means of innocent recreation and refreshment for the weary mind and body." Id. at 254. The Court noted that courts in other jurisdictions had held that a public library may be erected in a park without diverting it from park use, citing Spires v.Los Angeles, 150 Cal. 64, 87 P. 1026 (1906) and Riggs v. Bd. ofEducation, 27 Mich. 262 (1873), but did not say whether it would reach the same result under New York law.
Courts following the Williams case have held that improvements for strictly utilitarian purposes, even when beneficial to the public, are not permitted if they are unrelated to the recreational use of the park.See Friends of Van Cortlandt Park v. City of New York, 95 N.Y.2d 623,631 (construction of a water treatment plant not permitted);Ackerman v. Steisel, 104 A.D.2d 940 (2d Dep't 1984) (storage of sanitation vehicles and equipment not permitted). On the other hand, purely recreational uses such as ski trails and other winter sports facilities are permitted. Rivet v. Burdick, 255 A.D. 131 (4th Dep't 1938). Additionally, facilities that support recreational use, such as restaurants accessible by park users and other "common incidents of a pleasure ground," are permitted. Williams v. Gallatin, 229 N.Y. at 254;see also 795 Fifth Ave. Corp. v. New York, 15 N.Y.2d 221, 225 (1965).
A library is arguably more like the museum prohibited inWilliams than like the restaurant discussed approvingly in that case, because a library — like a museum — is associated more with educational and business purposes than with recreation, and any recreational use of a library — unlike a restaurant — is likely to be unrelated to the use of surrounding parkland. Therefore, Williams suggests that a library is not consistent with park use.
It is possible that the significance of Williams may be limited. First, the museum at issue in Williams was, by virtue of its subject matter, especially lacking in any recreational character. Second, decisions subsequent to Williams have suggested, without holding, that museums, and perhaps libraries as well, would now be considered permissible uses of parkland. In Matter of Central Parkway,140 Misc. 727 (Sup.Ct., Schenectady County 1931), the court stated that the occupation of parkland *Page 3 
for "art museums, galleries of painting and sculpture, free public libraries and other agencies contributing to the aesthetic enjoyment of eye and ear is not a perversion of the lands from park purposes."140 Misc. at 729. And in Tuck v. Heckscher, 29 N.Y.2d 288 (1971), the Court of Appeals described construction of a museum as "unquestionably a proper park use," 29 N.Y.2d at 294, although in that case a lease of land to the museum had been expressly authorized by the legislature.
Nonetheless, in light of the unsettled state of the law described above, we cannot confidently conclude that a court today would hold that legislative approval is unnecessary to build a public library on parkland. We therefore recommend that you seek legislation before constructing the library.
II. Authority to Hold Referendum
You have also asked, separately, whether the town board may hold a referendum on the question of whether to proceed with construction of the library. You have informed us that the Town intends to finance the cost of construction of the library through the issuance of bonds.
A municipality may conduct a referendum only if authorized by state law. Matter of McCabe v. Voorhis, 243 N.Y. 401, 413 (1926); Mills v.Sweeney, 219 N.Y. 213, 217-18 (1916). "Ever since the referendum has found recognition in the political system of this state it has been the policy of the legislature to deal with it directly and in express terms, and not delegate the right to adopt it to inferior legislative bodies."Mills v. Sweeney, 219 N.Y. at 217.
If the Town were planning to use tax revenues in the year of construction to pay for the construction of the library, a referendum would arguably be authorized by Town Law sections 81 and 220. Under these provisions, a town may, and under some circumstances must, submit to the voters a proposition to construct buildings necessary for town purposes and to equip public parks with suitable buildings.[1] Town Law § 81(1)(b), (c); id. § 220(2), (3). Both of these statutes provide that "[a]ny expenditure approved pursuant to [these] section[s] shall be paid for by taxes levied for the fiscal year in which such expenditure is to be made." Town Law §§ 81, 220.
Because the Town anticipates issuing bonds to pay for the construction of the library, rather than paying for it by taxes levied in the same fiscal year as the expenditure is made, sections 81 and 220 do not apply and thus do not authorize the Town to hold a referendum. These statutes expressly acknowledge, however, that *Page 4 
expenditures may be authorized and financed pursuant to the Local Finance Law, in which case they are governed by its provisions.
Local Finance Law § 35.00(b) provides that a town may hold a referendum on a bond resolution adopted by a town finance board, with the exception of bonds having a maturity of five years or less and certain other situations not relevant here. Therefore, if the bonds issued by the Town to finance the cost of construction of the library have a maturity of more than five years, the bond resolution will be subject to permissive referendum under Local Finance Law § 35.00(b). If, however, the bonds have a maturity of five years or less, the bond resolution will not be subject to a permissive referendum.
The expenditure of the bond proceeds to complete the project, as distinguished from the original issuance of the bonds, is not subject to permissive referendum in either case. Local Finance Law § 35.00(c) ("The expenditure of money for which it is proposed to issue obligations shall not be subject to a permissive or mandatory referendum in any town."). The purpose of this limitation was to avoid the possibility of dual referendums on a single project, first on the issuance of bonds pursuant to Local Finance Law § 35.00(b), and then on the expenditure of their proceeds pursuant to Town Law sections 81 and 220 (authorizing the expenditure of money for specific improvements). Matter of Town Bd. ofthe Town of Islip, 12 N.Y.2d 321, 327 (1963).
The Attorney General issues formal opinions only to officers and departments of state government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD Assistant Solicitor General In Charge of Opinions
By: PAUL GROENWEGEN Assistant Solicitor General
[1] This discussion assumes that a library is a suitable building for a park, whether because authorizing legislation has been obtained or otherwise. *Page 1