■ SKILLGAMES, LLC, Appellant, v SETH BRODY, Respondent. [767 NYS2d 418]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered on or about July 10, 2002, which granted defendant's motion to dismiss the complaint, unanimously modified, on the law, the motion denied as to the fraudulent inducement and promissory estoppel causes of action to the extent indicated herein, and otherwise affirmed, without costs.

Skillgames hired defendant as its Director of Marketing in July 2001. An employment agreement, drafted by Skillgames and signed by defendant on July 9, 2001, specifically provides that defendant was an at-will employee and, "[a]s such, either you or Skillgames may terminate the employment relationship at any time, with or without notice, for any reason." In addition to his salary, defendant's compensation included 110,000 Skillgames stock options, which were to vest over a period of four years.

At the time of the negotiations leading to his employment by Skillgames, defendant was employed by Priceline.com, Inc. (Priceline). According to the complaint, defendant represented to Skillgames that he was "committed to continued employment with Skillgames" and that he would terminate his employment with Priceline immediately upon his commencing employment with Skillgames, which would result in his forfeiture of unvested Priceline stock options worth approximately $125,000. Skillgames alleges that, in reliance on defendant's representations, it agreed to provide defendant with a $125,000 loan, secured solely by the 110,000 Skillgames stock options it was providing defendant as part of his compensation package. The terms of the loan were set forth in a "Nonrecourse Promissory Note," which expressly exonerates defendant from liability for the amount of the loan, stating that defendant "has no personal liability and [Skillgames] has no recourse against any asset of [defendant] for repayment of amounts due hereunder other than the Pledged Assets." Defendant began working for Skillgames in late July 2001.

The complaint further alleges that, contrary to his representations, defendant did not immediately terminate his employment with Priceline, but, rather, continued it until October 2001, more than two months after he began working for Skillgames.

As a result, defendant did not lose his Priceline stock options. In addition, Skillgames claims that, rather than being committed to continued employment with Skillgames, defendant quit in November 2001, less than four months after he began. Skillgames demanded that defendant repay the nonrecourse loan, defendant refused to do so, and this lawsuit ensued.

The essence of Skillgames's complaint is that it was induced to grant defendant the $125,000 nonrecourse loan based upon defendant's allegedly false representations and promises. The complaint asserts five causes of action, only four of which— fraudulent inducement, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and quantum meruit—are before us on appeal. (The IAS court found that Skillgames's remaining claim, which involved a separate loan for $4,500, did state a cause of action and remanded it to the Civil Court. That aspect of the court's decision was not appealed.) Skillgames seeks repayment of the $125,000 loan plus interest, attorneys' fees and punitive damages.

Defendant moved, pursuant to CPLR 3211 (a) (7), to dismiss the complaint for failure to state a cause of action. In support, defendant states in an affidavit that he terminated his full-time employment with Priceline when he began working for Skillgames but that he continued to work part-time for Priceline in order to complete a project he had begun prior to accepting Skillgames's employment offer. He avers that his work for Priceline was performed on his own time and from his home and did not interfere or conflict with his Skillgames employment. Defendant acknowledges that his continued work for Priceline permitted some of his Priceline stock options to vest over the two months of his part-time employment. However, he contends that he forfeited $130,000 worth of unvested Priceline stock options when he terminated his part-time work on October 12, 2001. Defendant submitted an additional affidavit from Priceline's General Counsel confirming the forfeiture of defendant's unvested Priceline stock options.

Further, defendant denies that he terminated his employment with Skillgames. According to defendant's affidavit, within weeks after he began working for Skillgames, Walt Disney Company, a major investor in Skillgames's initial business project, withdrew its support, and, as a result, approximately 20% of Skillgames's employees (not including defendant) were laid off. Then, on November 8, 2001, Jay Walker, Skillgames's controlling shareholder, announced that Skillgames's business would not be launched and that the company would be dissolved. The breakup of Skillgames left defendant with 110,000

worthless Skillgames stock options and without a job. Defendant thereafter was offered and accepted employment with Walker Digital, another company owned by Walker, but soon after concluded that Walker Digital's chances of success were minimal. He contacted Priceline and asked if he could return and Priceline accepted him back.

The IAS court dismissed Skillgames's claims for fraudulent inducement, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and quantum meruit.

In considering a motion to dismiss, a court must accept as true the facts alleged in the complaint as well as all reasonable inferences that may be gleaned from those facts (*McGill v Parker*, 179 AD2d 98, 105 [1992]; *see also Cron v Hargro Fabrics*, 91 NY2d 362, 366 [1998]; *Morone v Morone*, 50 NY2d 481, 484 [1980]). The court is not authorized to assess the merits of the complaint or any of its factual allegations, but only to determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action (*see e.g. Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). However, factual allegations that do not state a viable cause of action, that consist of bare legal conclusions, or that are inherently incredible or clearly contradicted by documentary evidence are not entitled to such consideration (*Caniglia v Chicago Tribune-New York News Syndicate*, 204 AD2d 233 [1994]).

Skillgames's fraudulent inducement claim requires it to allege and prove that it reasonably relied on a material misrepresentation by defendant and that it suffered an injury as a result of that reliance (*National Union Fire Ins. Co. of Pittsburgh, Pa. v Worley*, 257 AD2d 228, 233 [1999]). Similarly, to state a cause of action for promissory estoppel, Skillgames must allege that it reasonably relied to its detriment on a promise by defendant (*Rogers v Town of Islip*, 230 AD2d 727 [1996]).

Skillgames argues that the IAS court improperly based its dismissal of the fraudulent inducement and promissory estoppel claims on the parties' employment agreement even though its claims are specifically addressed to the promissory note. However, regardless of the terms of the employment agreement, defendant's *status* as an at-will employee—which was simply confirmed by the employment agreement—renders unreasonable Skillgames's claimed reliance on defendant's alleged representation (or promise) that he was "committed to continued employment" with Skillgames. As an at-will employee, defendant *was free* to terminate his employment at any time, just as Skillgames was free to fire defendant at any time. That is the essence of the doctrine of employment-at-will (*see Murphy v*

*American Home Prods. Corp.*, 58 NY2d 293 [1983]). Thus, the court properly dismissed Skillgames's fraudulent inducement and promissory estoppel claims to the extent they were premised on defendant's alleged representation that he was "committed to continued employment."

However, the same cannot be said about defendant's alleged representation that he would immediately terminate his Priceline employment and thereby incur an immediate loss of $125,000 worth of unvested Priceline stock options. There is nothing in this representation that would render Skillgames's alleged reliance unreasonable as a matter of law. Whether defendant actually made those representations, whether they were material to the parties' relationship, whether Skillgames relied on those representations, and whether any such reliance was reasonable under the circumstances presented are all factual matters that cannot be determined on the present motion. Contrary to defendant's contention, the affidavits submitted in support of defendant's CPLR 3211 (a) (7) motion do not "conclusively establish that [plaintiff] has no cause of action" (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 636 [1976]; *see also Health-Loom Corp. v Soho Plaza Corp.*, 209 AD2d 197 [1994]); they merely dispute some of the factual allegations of the complaint.

Thus, Skillgames's causes of action for fraudulent inducement and promissory estoppel are reinstated to the extent they are premised on defendant's alleged representations that he would immediately terminate his Priceline employment and, as a result, immediately lose $125,000 worth of Priceline stock options.

The IAS court correctly dismissed Skillgames's claim for quantum meruit. To state a claim in quantum meruit, a plaintiff must allege its good faith performance of services, the defendant's acceptance of those services, an expectation of compensation for the services, and the reasonable value of those services (*Freedman v Pearlman*, 271 AD2d 301, 304 [2000]). As an initial matter, Skillgames does not allege that it performed any services for defendant, only that it provided him with money in the form of a loan. The court is unaware of any case applying quantum meruit to the provision of money rather than services. In addition, a claim for quantum meruit generally will not lie where a contract between the parties governs the dispute (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382 [1987]; *see also Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 69 [1978]; *Zolotar v New York Life Ins. Co.*, 172 AD2d 27, 31 [1991]; *cf. Joseph Sternberg, Inc. v Walber 36th St. Assoc.*, 187 AD2d 225, 227-229 [1993]). The promissory note, which Skillgames claims

governs this dispute, thus defeats Skillgames's quantum meruit claim. Skillgames cannot seek to circumvent the terms of its agreement by characterizing its claim as one in quantum meruit. In addition, to the extent that the defendant's "continued employment" by Skillgames constitutes the "compensation" that Skillgames allegedly expected, that expectation is not only unreasonable, it is belied by both defendant's status as an at-will employee and by the employment agreement's specific declaration of that fact.

The IAS court's dismissal of Skillgames's related claim for breach of the implied covenant of good faith and fair dealing was also correct. Implicit in every contract is a promise of good faith and fair dealing (*Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62 [1978]), which is breached when a party "acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement" (*Jaffe v Paramount Communications*, 222 AD2d 17, 22-23 [1996]). Skillgames alleges that the benefit of its bargain was defendant's continued employment with Skillgames. However, while the benefit to Skillgames of the promissory note may have been to induce defendant to accept employment, it could not be that defendant would remain as a Skillgames employee forever in view of defendant's status as an at-will employee, a status Skillgames specifically wrote into the employment agreement. A claim for breach of the implied covenant of good faith and fair dealing cannot substitute for an unsustainable breach of contract claim (*Triton Partners v Prudential Sec.*, 301 AD2d 411 [2003]).

Finally, we do not accept Skillgames's contention that defendant's labeling his motion as one to dismiss the complaint "in its entirety" precluded the court from dismissing four of the complaint's five claims when it found the fifth did state a cause of action. While such a rule has been applied in some circumstances (*see e.g. McInerney v Village of Bellport*, 87 AD2d 861 [1982]), when, as was the case here, the motion particularizes why each claim should be dismissed, the court should treat the motion as applying to each cause of action alleged in the complaint (*see Halpern v Halpern*, 109 AD2d 818 [1985]), regardless of how the motion is denominated. Concur—Andrias, J.P., Saxe, Sullivan, Rosenberger and Marlow, JJ.