[832 NYS2d 157]

KENNETH D. SMALLEY et al., Appellants, v THE DREYFUS CORPO-
RATION et al., Respondents.

First Department, March 8, 2007

## APPEARANCES OF COUNSEL

*The Law Offices of Neal Brickman, P.C.*, New York City (*Neal Brickman* of counsel), for appellants.

*Reed Smith, LLP*, New York City (*Gil Feder, John C. Unkovic* and *Paul P. Rooney* of counsel), for respondents.

## OPINION OF THE COURT

CATTERSON, J.

The plaintiffs in this action are a group of former at-will employees who managed investment portfolios for The Dreyfus

Corporation. They commenced this action for fraud, breach of contract, quantum meruit and defamation after they were terminated following a merger with another financial management company. The motion court granted the defendants' motion to dismiss the complaint in its entirety because the plaintiffs were at-will employees. As such, the court held they could not reasonably rely on promises of continued employment or "masquerade breach of contract claims as fraud claims."

The motion court erred only in its dismissal of the plaintiffs' fraudulent inducement claims. Specifically, we find that the defendants' alleged misrepresentations did not necessarily involve promises of continued employment but rather may be construed as misrepresentations of existing fact relating to the merger of two asset management groups.

Plaintiff Gerald E. Thunelius was employed by Dreyfus for 15 years before becoming director of its Taxable Fixed Income Group. Plaintiffs Smalley, Fetherston, Allen and Haut were hired by Dreyfus between 2000 to 2003. Dreyfus is a subsidiary of defendant Mellon Financial Corporation, which is a financial services company in the business of, inter alia, investing and managing money through various wholly owned or affiliated managers. The Taxable Fixed Income Group was responsible for managing funds comprised of fixed income products including high yield investments and investment grade corporate bonds.

In Thunelius's 1989 employment application, he agreed that "either Dreyfus or [he] could terminate [his] employment at will, with or without cause, at any time for any reason." The other four plaintiffs each signed and initialed similar statements on their employment applications.

The plaintiffs' formal offer letters set forth their monthly salaries and advised them of their opportunity "to participate in the Portfolio Managers Incentive Plan" with certain minimum bonuses guaranteed for that particular year. The offer letters did not otherwise discuss any specific term of employment.

According to the plaintiffs, while rumors existed that Mellon might acquire the portfolio management company Standish Ayer & Woods, Fetherston was hired on December 31, 2000. Fetherston accepted the position in reliance on "assurances" given by Stephen E. Canter, Dreyfus's CEO, to Thunelius that merger "discussions were very preliminary, and that in any event, there was nothing Thunelius or his group needed to be concerned about."

Mellon did, in fact, acquire Standish in March 2001, and from that point forward, Thunelius inquired on various occasions

about whether Dreyfus intended to merge Standish and the Dreyfus Taxable Fixed Income Group. The plaintiffs allege that in assurances made in January 2001, March 2001, October 2001, "throughout all of 2001 and 2002," July 2003, October 2003, November 2003 and April 2004, defendants Canter and Steven R. Byers, Dreyfus's Chief Investment Officer, responded that Dreyfus had no intention of forming such a merger.

Throughout this period, plaintiffs Smalley, Haut and Allen claim they also took positions with Dreyfus, in reliance upon Byers' assurances that there would be *no* merger between the Dreyfus Taxable Fixed Income Group and Standish, and that the Dreyfus group would continue in New York, as the flagship manager within the Mellon family.

As for compensation, Smalley and Haut claim that at their interviews, "Byers assured" them that their "target bonus would be equal to, at least, 1.5 times [their] base salary." Similarly, during his interview during the summer of 2003, Allen alleged that Byers represented to him that "his 2003 bonus was for a partial year and that it would be adjusted for 2004 to reflect a full year of service."

Allegedly in reliance on these assurances, Smalley accepted employment with Dreyfus under an arrangement that guaranteed him compensation of at least $540,000 for the remainder of 2001. He claims that consequently he turned down an offer from CSFB proprietary trading that would have guaranteed him compensation of at least $600,000 for the same time period.

On October 1, 2004, the new CEO of Standish started to effect a merger of the Taxable Fixed Income Group. Thunelius was advised that the merger was imminent and that he would receive enhanced displacement packages for his group by the end of October 2004.

On December 2, 2004, Byers met with the entire Taxable Fixed Income Group and advised it that, in June 2004 the board of directors had instituted procedures to move all of the group's assets to Standish because of the Taxable Fixed Income Group's "poor performance."

On February 28, 2005, every member of the Taxable Fixed Income Group was terminated, and all of the group's assets were transferred to Standish. Plaintiffs did receive benefits under the displacement plan as well as bonuses.

The plaintiffs do not dispute that they were at-will employees. Nevertheless, they commenced this action against Dreyfus,

Mellon, Byers, Canter and Martin G. McGuinn, Mellon's Chairman, claiming that they were deceived regarding Mellon's plans to merge the unit into Standish. They claim that the deception included "approving specific compensation arrangements designed fraudulently to induce plaintiffs to continue their employment with Dreyfus under the mistaken belief that the planned consolidation with Standish was allegedly 'off the table.' " The plaintiffs also set forth causes of action for breach of contract alleging the defendants broke three oral agreements, quantum meruit and defamation.

The defendants asserted that the plaintiffs were all at-will employees who received bonuses which were plainly discretionary, and who performed poorly. The defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7) and 3016 (a). The motion court dismissed the complaint in its entirety.

For the reasons set forth below, we modify and reinstate the plaintiffs' cause of action for fraudulent inducement.

It is beyond dispute that an employee-at-will cannot reasonably rely on an employer's representation of continued employment. (*See Tannehill v Paul Stuart, Inc.*, 226 AD2d 117, 118 [1st Dept 1996]; *Skillgames, LLC v Brody*, 1 AD3d 247, 250 [1st Dept 2003]; *Arias v Women in Need*, 274 AD2d 353, 354 [1st Dept 2000].) In this case, each of the employment agreements specifically provided that employment with Dreyfus was terminable "at-will, with or without cause, at any time for any reason . . . with or without notice," and each individual either signed or initialled his or her consent next to the paragraph indicating that employment was terminable at will.

The motion court reasoned that even if the defendants represented that there was no possibility of any merger, there could not be reasonable reliance on this representation "precisely because the plaintiffs were at will employees."

However, employment-at-will does not bar a cause of action for fraudulent inducement so long as the misrepresentation involves an existing fact and is not a promise as to future or continued employment. (*Stewart v Jackson & Nash*, 976 F2d 86, 88 [2d Cir 1992] [law firm hired an environmental attorney misrepresenting to her that it was in the process of establishing an environmental law department]; *see also, Backer v Lewit*, 180 AD2d 134, 139 [1st Dept 1992] [salesman induced to leave prior employment based upon misrepresentation that prospective employer would produce a fall line when in fact employer's intention was to liquidate inventory]; *Hyman v International*

*Bus. Machs. Corp.*, 2000 WL 1538161, 2000 US Dist LEXIS 15136 [SD NY 2000] [plaintiffs were induced to leave secure positions by defendants' false representations that firm had signed five year contract with IBM].) Thus, an action for fraud can exist so long as it concerns an injury and damages separate and apart from the employee's termination.

To establish a prima facie claim of fraudulent inducement, a plaintiff must establish that a material representation, known to be false, has been made with the intention of inducing reliance on the misstatement, and as a result of its reliance plaintiff sustained damages. (*First Nationwide Bank v 965 Amsterdam*, 212 AD2d 469, 470-471 [1st Dept 1995]; *see also* Restatement [Second] of Torts § 525.)

In this case, the plaintiffs claim that the defendants' promises that "there would be no merger" relate not to promises of future employment as in *Tannehill*, but to misrepresentations of existing fact. In other words, even while plans were in place to merge the two groups, the plaintiffs were being assured that no merger would take place. Moreover, the plaintiffs allege that the defendants made these representations knowing that they were false and with the intention of inducing the plaintiffs to join Mellon, or refrain from leaving Mellon.

The defendants allege that the plaintiffs' argument is disingenuous because the plaintiffs are suing over the "alleged promise not to terminate a group" as happened when the Taxable Fixed Income Group was merged with Standish, and so, are nevertheless suing over termination of employment. The defendants assert that the plaintiffs are essentially arguing that once defendants made the alleged promise not to merge, defendants could not then change their minds and effectuate a merger.

On the contrary, the plaintiffs are not alleging that the defendants changed their mind. Rather the plaintiffs allege that the defendants knew all along that a merger was going to take place, and that the defendants were working on such merger at the very same time as they were assuring the group that a merger was unlikely.

Accepting the plaintiffs' allegations as true for the purpose of determining whether the plaintiffs have a cognizable cause of action (*see Skillgames, LLC v Brody*, 1 AD3d 247 [2003]), we accept that the defendants did assure the plaintiffs that a merger was not going to happen. We reject, however, the defendants' contention that such assurance was in effect, merely an assur-

ance of continued employment, and therefore cannot be reasonably relied upon.

It would be a foolhardy prospective employee who in an employment-at-will situation did not consider all relevant available factors in order to make an informed assessment of the chances of continuing employment with the prospective employer. In so doing, information about a merger "in the works" would be crucial to such an employee. While a company that is not planning a merger with another is no guarantee of continued employment, accepting a job with a company that plans such a consolidation is taking on a risk higher than that of normal at-will employment given that mergers do often lead to downsizing and work force reduction.

For a prospective at-will employee to rely on an assurance that a merger is not going to happen is not tantamount to relying on an assurance of continued employment. The assurance is merely an indication that, all other things being equal, termination is less rather than more likely, not that termination is not possible.

The plaintiffs allege that the defendants made the representation that there were no plans to merge or consolidate with Standish at the time of hiring, and in a "pivotal" meeting in April 2004. To bolster this representation the defendants told the plaintiffs that, inter alia, the Taxable Fixed Income Group would remain the flagship manager and that a merger made no sense since the two groups managed distinct products styles. These allegations are sufficient for a cause of action for fraudulent inducement, and that part of the plaintiffs' complaint should be reinstated.

■ The motion court, however, properly dismissed the plaintiffs' causes of action for breach of contract, quantum meruit and defamation. In their breach of contract claim, the plaintiffs alleged that the defendants broke three oral agreements: (1) Dreyfus agreed to pay the plaintiffs year-end target bonuses of at least 1.5 times their base salaries; (2) Dreyfus agreed to distribute to members of the Dreyfus Taxable Fixed Income Group the entirety of any performance fees earned by that group; and (3) Dreyfus agreed, on or about May 1, 2004, to maintain the Dreyfus Taxable Fixed Income Group intact as an independent fixed income group shop for, at least, one year.

The plaintiffs have no cause of action for breach of contract as to the third oral promise since as a promise of future action this would be tantamount to a promise of continued employ-

ment which the plaintiffs could not reasonably rely upon as employees-at-will. (*See Parker v Hill & Knowlton*, 282 AD2d 397 [1st Dept 2001].)

Nor can the plaintiffs sustain a breach of contract claim on the first two oral promises as to bonuses and performance fees. It is well settled that "[a]n employee's entitlement to a bonus is governed by the terms of the employer's bonus plan." (*Hall v United Parcel Serv. of Am.*, 76 NY2d 27, 36 [1990].) Here, the 2004 Incentive Compensation Plan, which governed the bonuses, specifically provided that the Executive Management Group Member and Mellon's Chairman had the authority to "modify or annul any individual award, at their sole discretion, with or without notice, at any time." Additionally, the "2004 Plan" provides that "the making, payment and amount of all awards hereunder shall be within the complete discretion of the Corporation acting through its' [*sic*] officers."

Inasmuch as the unambiguous term of the governing clear and complete writings negate the plaintiffs' claims, the plaintiffs are barred from relying on parol evidence. (*See W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 159-160 [1990]; *Marine Midland Bank-S. v Thurlow*, 53 NY2d 381, 387 [1981].)

Similarly, even if the defendants promised the plaintiffs performance fees in 2003, the language in the Employee Handbook indicating that the defendants had the authority to "modify or annul any individual award, at their sole discretion, with or without notice, at any time" renders untenable the plaintiffs' claim for a portion of the performance fee. (*See Kaplan v Capital Co. of Am.*, 298 AD2d 110, 111 [1st Dept 2002], *lv denied* 99 NY2d 510 [2003]; *cf. Weiner v Diebold Group*, 173 AD2d 166, 167 [1st Dept 1991].)

The motion court properly found that the plaintiffs failed to state a claim for quantum meruit. The court correctly observed that the defendants did not deprive the plaintiffs of the reasonable value of their services rendered. The court reasoned that, as each letter extending employment to the plaintiffs stated, the plaintiffs were provided a base salary and were eligible to participate in Dreyfus's bonus plans, and there was no dispute that the plaintiffs were paid at least their base compensation for their work at Dreyfus or that they received bonus compensation.

In order to make out a claim in quantum meruit, a plaintiff must show (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are

rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services. (*Matter of Adams*, 1 AD2d 259, 262 [4th Dept 1956], *affd* 2 NY2d 796 [1957].) This rule is based on the principle that the performance and acceptance of services give rise to the inference of an implied contract to pay for the reasonable value of such services. (*Id.* at 262.)

Here, where it is undisputed that the plaintiffs received their base salaries plus bonuses, their quantum meruit claim is based on their contention that the amounts of the bonuses they received were inadequate. Yet, unlike cases where plaintiffs were able to present evidence of an implied contract, here there existed express contracts: incentive compensation plans which clearly stated that the amounts of the bonuses were subject to defendants' discretion. Thus, the cases the plaintiffs cite where there existed a properly pleaded claim of quantum meruit are distinguishable. (*See Joseph Sternberg, Inc. v Walber 36th St. Assoc.*, 187 AD2d 225, 227 [1st Dept 1993] [contract silent as to plaintiff's entitlement to a commission]; *Moors v Hall*, 143 AD2d 336 [2d Dept 1988].)

■ Finally, the court properly rejected the plaintiffs' defamation claims. The plaintiffs claimed that the defendants defamed them on five occasions including in a CBS Market-Watch story, and in a Global Investor Magazine article. The plaintiffs allege that the defendants either made the statements or approved the statements by their silence. The motion court correctly held that the plaintiffs had failed to demonstrate how these words were attributable to the defendants. There was no evidence or allegation that these statements came from the defendants, nor had the plaintiffs indicated who specifically provided such statements. As the defendants correctly assert: "none of the allegedly libelous articles attributes a libelous statement to any defendant and plaintiffs plead no facts suggesting that defendants 'caused' the statements to be published."

Nor does the plaintiffs' slander claim fare any better. Among other things, the two verbal statements on which the plaintiffs base their claim are paraphrased and therefore do not meet the minimum requirements of CPLR 3013 and 3016 (a). (*See Hernandez v New York City Law Dept. Corp. Counsel*, 258 AD2d 390, 390 [1st Dept 1999], *appeal dismissed* 93 NY2d 957 [1999], *cert denied* 529 US 1090 [2000]; *Schwartz v Nordstrom, Inc.*, 160 AD2d 240, 241 [1st Dept 1990], *appeal dismissed* 76 NY2d 845 [1990], *lv denied* 76 NY2d 711 [1990].)

Accordingly, the order of the Supreme Court, New York County (Richard B. Lowe, III, J.), entered February 8, 2006, granting defendants' motion to dismiss the complaint in its entirety pursuant to CPLR 3211 (a) (1) and (7), should be modified, on the law, to the extent of reinstating plaintiffs' cause of action for fraudulent inducement, and otherwise affirmed, without costs.

McGUIRE, J. (concurring in part and dissenting in part). I agree that a prudent prospective employee contemplating at-will employment would consider any representations made by the prospective employer regarding whether it was planning to merge or discussing merger with another entity. For present purposes, I also am willing to assume that if the prospective employer assured the prospective employee (or a current employee deciding whether to accept employment elsewhere) that there were no such plans or discussions, the prospective employee reasonably might conclude that the possibility of termination in the future by the employer, all other things being equal, was less rather than more likely. Plaintiffs, however, acted at their own peril in construing this assurance as a proxy for an assurance of their continued employment. Accordingly, I disagree with the majority's conclusion that because the no-merger representation "involves an existing fact and is not a promise as to future or continued employment," the fraudulent inducement cause of action should be reinstated.

Even if the alleged misrepresentation accurately is characterized as a misrepresentation of an existing fact, plaintiffs could not reasonably rely on it (see *Skillgames, LLC v Brody*, 1 AD3d 247, 250 [2003] ["defendant's *status* as an at-will employee . . . renders unreasonable Skillgames's claimed reliance on defendant's alleged representation (or promise) that he was 'committed to continued employment' with Skillgames"]). All the injury plaintiffs allege is the result of the decision by Dreyfus to terminate their employment; none of the injury is independent of the termination of their employment (*cf. Stewart v Jackson & Nash*, 976 F2d 86, 88 [2d Cir 1992] [upholding fraud claim by attorney whose employment was terminated by defendant law firm; attorney's "alleged injuries . . . commenced well before her termination and were, in several important respects, unrelated to it"]). Although the Court of Appeals has not addressed the issue, in my view the absence of such independent injury is fatal to plaintiffs' fraudulent inducement claim. As I agree with the majority's analysis in all other respects, I would affirm the order granting defendants' motion to dismiss.

SAXE, J.P., MARLOW and NARDELLI, JJ., concur with CATTERSON, J.; McGUIRE, J., concurs in part and dissents in part in a separate opinion.

Order, Supreme Court, New York County, entered February 8, 2006, modified, on the law, to the extent of reinstating plaintiffs' cause of action for fraudulent inducement, and otherwise affirmed, without costs.