SOGETI, U.S.A., L.L.C., Plaintiff,

v.

WHIRLWIND BUILDING SYSTEMS, INC., Defendant.

No. 04 Civ. 8833(RJH).

United States District Court, S.D. New York.

July 31, 2007.

Neil R. Blecher, Capgemini North America, Inc., Gerald D. Silver, Winston & Strawn LLP, New York City, for Plaintiff.

Matthew Luke Hoeg, Thurston Bailey, Andrews Kurth LLP, Houston, TX, Lynne M. Fischman Uniman, Andrews Kurth LLP, New York City, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOLWELL, District Judge.

Defendant Whirlwind Building Systems, Inc. ("Whirlwind") moves (1) for additional, amended or supplemental findings of fact and conclusions of law pursuant to Rule 52(b) of the Federal Rules of Civil Procedure ("Rule"), and (2) for a new trial, or alternatively, to alter or amend final judgment pursuant to Rule 59(a)(2) and (e). For the reasons stated below, defendant's motions are denied.

### BACKGROUND

Plaintiff Sogeti USA LLC ("Sogeti") initiated suit against Whirlwind for breach of contract for failure to pay for services rendered under a series of related consulting agreements. In accordance with the terms of those agreements, Sogeti was retained to advise Whirlwind on the evaluation, installation and implementation of an automated and integrated information system known as an Enterprise Resource Planning System ("ERP"). Whirlwind terminated Sogeti and refused to pay outstanding invoices asserting, primarily, that Sogeti had intentionally or negligently misrepresented the ability of the ERP system to be provided by a third-party supplier (Oracle) to track Whirlwind's actual inventory costs.

After a two and a half day bench trial, this Court entered judgment for Sogeti, concluding that Sogeti fully performed its obligations under the consulting agreements and was entitled to recover the face amount of the unpaid invoices, subject to certain relatively minor adjustments, plus an interest charge of 1.5% per month as provided by the agreements. Concomi-

tantly, the Court found that there was a failure of proof with respect to defendant's counterclaims for fraud, negligent misrepresentation and unjust enrichment. See the Court's Findings of Fact and Conclusions of Law issued from the bench on May 26, 2006 ("Opinion").

### STANDARD

Motions for reconsideration are denied unless "[the previous decision] was based on a mistake of fact or clear error of law, or ... refusal to revisit the earlier decision would work a manifest injustice." *LiButti v. U.S.*, 178 F.3d 114, 118 (2d Cir.1999). Furthermore, such a mistake must "reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for additional, amended or supplemental findings of fact and conclusions of law pursuant to Rule 52 and motions for a new trial or amended judgments pursuant to Rule 59, therefore, will not be granted simply to reconsider issues that have already been fully litigated and upon which a legally sound decision has already been rendered. *See, e.g., Id.; see also Campbell v. Cantor Fitzgerald & Co., Inc.*, 205 F.3d 1321, 1321 (2d Cir.1999); *Wechsler v. Hunt Health Systems, Ltd.*, No. 94 Civ. 8294(PKL), 2004 WL 2210261, at *2 (S.D.N.Y., Sept. 30, 2004); *GTFM, Inc. v. Solid Clothing Inc.*, No. 01 Civ. 2629(DLC), 2002 WL 31886612, at *1 (S.D.N.Y., Dec. 27, 2002).

### DISCUSSION

1. *The Award of the Contractual Rate of Interest*

Whirlwind ascribes error to the Court's award of a monthly interest charge of 1.5% on Sogeti's unpaid invoices. Whirlwind contends that this charge is usurious and contrary to the terms of the relevant agreement which provides that

interest shall be calculated at the rate of "1.5% per month (or the maximum rate permitted by applicable law, if lower)." Defendant's arguments are raised for the first time in its post-judgment motions and for this reason alone must be rejected. *Davidson v. Scully,* 172 F.Supp.2d 458, 462 (S.D.N.Y.2001) (motion to reconsider under Rule 59 cannot advance "new facts, issues or arguments not previously presented to the court."). In any event, defendant's usury argument lacks merit as the law of usury does no apply here because the monthly interest Sogeti charged was neither a loan nor forbearance. *F.K. Gailey Co., Inc. v. Wahl,* 262 A.D.2d 985, 692 N.Y.S.2d 563, 564 (N.Y.App.Div.1999) (the two percent late fee plaintiff charged for late payments was not a loan or forbearance, and therefore, the law of usury was not applicable); *Waterbury v. City of Oswego,* 251 A.D.2d 1060, 674 N.Y.S.2d 530, 531 (N.Y.App.Div.1998) (usury statute inapplicable because the 10% late fee defendant charged for delinquent water payments was not a loan or forbearance, but rather, a device to encourage prompt payment of bills). Sogeti did not loan money to Whirlwind and "when there is no loan, there can be no usury." *Waterbury v. City of Oswego,* 674 N.Y.S.2d at 531 (quoting *Feinberg v. Old Vestal Rd. Assocs.,* 157 A.D.2d 1002, 550 N.Y.S.2d 482, 483 (N.Y.App.Div.1990)). Moreover, the law of usury is not even applicable to agreements for the provision of goods and services as they are not considered to constitute loan agreements. *In re Renshaw,* 229 B.R. 552, 557 (2nd Cir.BAP 1999) ("[t]he sale of goods and services are exempt from the usury law [because] [u]nlike an entity which lends money, it is not illegal for an entity providing goods and services ... to charge one price for cash and another price (origi-nal price plus a Service Charge) for a sale on credit.").

Whirlwind and Sogeti were not in a lender-borrower relationship, but even if they *were,* a corporation cannot assert a defense of usury to avoid payment of an obligation. *Lessinger v. C.I.R.,* 872 F.2d 519, 521 (2d Cir.1989) (under New York General Obligations law § 5–521(1), "corporation prohibited from interposing defense of usury"); *see also Intima–Eighteen v. Schreiber,* 172 A.D.2d 456, 568 N.Y.S.2d 802, 804 (N.Y.App.Div.1991).[1]

## 2. *Proof of Services Provided*

■ Defendant argues, as it did at trial, that Sogeti failed to prove that it performed the services for which it billed because it did not produce the employee timesheets upon which the invoices were based. However, the contract between the parties only required that invoices be "based upon Sogeti ... timesheets" and the undisputed testimony is that they were. (Tr. at 45, 42.) While the underlying timesheet was no longer available at trial, the evidence before the Court, which included the initial approval for payment of certain outstanding invoices by Whirlwind's CFO, was more than sufficient to support the conclusion that Sogeti's invoice statements were accurate. (Opinion at 379.)

## 3. *Work Performed by Alleged Subcontractors*

■ The primary contract between the parties provided that Sogeti's use of subcontractors was subject to Whirlwind's prior expresses written consent. Whirlwind contends that two of the workers on the ERP project (Lenore and Ballard) were subcontractors not approved by Whirlwind

---

**1.** A corporation may avail itself of a defense of criminal usury when the rate of interest exceeds 25%, an exception not applicable here. *Id.*

and, therefore, it should not be required to pay for their services. The Court rejected this argument at trial finding that Sogeti had not subcontracted any portion of the agreement; rather it had hired Lenore as an outside consultant—not as a subcontractor—to lead a team of Sogeti employees, which team was to be responsible for the implementation phase of the ERP project. Consequently, there was no breach of the subcontractor clause and no basis for Whirlwind to refuse to pay for Lenore's services. Whirlwind has presented no new facts or controlling authority that the Court overlooked that would alter its original decision.

### 4. Billing Rates for Jeszensky, Johnson and Grant.

The parties agree that Sogeti employees Jeszensky, Johnson and Grant were properly billed at $150/hour for work during the selection phase of the ERP project and that they were to be billed at $75/hour for work during the implementation stage. While the documents were inconclusive, the Court carefully evaluated the testimony as well as the documents and concluded that implementation work began in early May, 2002. Therefore, invoices for the indicated employees' time before May 3, 2002 was properly billed at $150/hour while time billed after May 3 (Invoices 2620 and 3130) should have been billed at the reduced rate. Other than characterizing the Court's conclusion as a "manifest error of both fact and law," Whirlwind offers no new facts nor cites a single authority to support a different conclusion.

### 5. Work by "Unauthorized" Sogeti Employees.

Four Sogeti employees were added to the ERP team in May and June 2002. Whirlwind argues that the composition of

the working team was set forth in the contract which could not be amended, except in writing. Since there is no written amendment adding these employees to the team, Whirlwind contends that it was not obligated to pay for their services. This issue was also fully vetted at trial and the Court credited the testimony of Sogeti witnesses that Whirlwind's CFO was aware that new members had been added to the Sogeti team, had approved their resumes, observed them working at Whirlwind's offices and knowingly accepted their services. (Tr. 136–42.) Whirlwind's actions waived any right it had to require a written amendment to the working team list.

### 6. Work Performed from June 7 to June 13, 2002

 Whirlwind argues that the final interim working agreement between the parties (Ex. 34) expired by its terms on June 7, 2002 and, therefore, that Sogeti is not entitled to recover for services rendered between June 7 and June 13, 2002, the date on which Sogeti was terminated.[2] Defendant's argument simply ignores the testimony of Sogeti witnesses that Whirlwind explicitly requested the Sogeti team to continue working on the implementation phase of the project while the parties negotiated a final agreement for that phase. (Tr. 107, 138–39, 151.) Under a theory of quasi/implied contract, because Sogeti's services were (1) performed in good faith, (2) accepted by Whirlwind, and (3) performed with the expectation of compensation, Sogeti is entitled to the reasonable value of its services in quantum meruit. See, e.g., Smalley v. Dreyfus Corporation, 40 A.D.3d 99, 832 N.Y.S.2d 157, 163 (N.Y.App.Div.2007) ("This rule is based on the principle that performance and acceptance of services gives rise to the inference

---

**2.** This argument is raised for the first time in Whirlwind's post-judgment motions and for

this reason must be rejected. See Davidson, 172 F.Supp.2d at 462.

of an implied contract to pay for the reasonable value of such services."); *Priore v. New York Yankees,* 307 A.D.2d 67, 761 N.Y.S.2d 608, 612 (N.Y.App.Div.2003); *Landcom, Inc. v. Galen–Lyons Joint Landfill Com'n,* 259 A.D.2d 967, 687 N.Y.S.2d 841, 842 (N.Y.App.Div.1999). Having requested and accepted Sogeti's services, Whirlwind is obligated to pay for them.

7. *Whirlwind's Claims for Breach of Contract, Fraud and Neglect Misrepresentation*

Whirlwind claims that the Court's findings are inadequate because they do not separately address whether Sogeti properly completed all tasks it was required to perform under the agreements, or whether Sogeti misrepresented that it is capable of performing each such task. The Court, however, carefully considered all of the alleged breaches proffered at trial and concluded that "Sogeti performed its obligations under [the] agreements." (Opinion at 380.) Having fully performed its obligations, Sogeti can hardly be found to have made misrepresentations about its ability to do so. Whirlwind had a full opportunity to present its defenses and counterclaims at trial; however, they were found to be lacking. No new facts or legal authority have been brought to the Court's attention on the instant motions that would lead the Court to reevaluate its prior rulings. Accordingly, Whirlwind's motions are denied.

SO ORDERED.