## GSP Merrimack LLC v Javelin Global Commodities (UK) Ltd.

2024 NY Slip Op 33460(U)

September 26, 2024

Supreme Court, New York County

Docket Number: Index No. 650013/2024

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 49M

------------------------------------------------------------------------X

GSP MERRIMACK LLC

                                Plaintiff,

                   - v -

JAVELIN GLOBAL COMMODITIES (UK) LTD.,

                        Defendant.

------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 650013/2024 |
| **MOTION DATE** | 02/13/2024 |
| **MOTION SEQ. NO.** | 003 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 003) 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 47, 49, 58, 59, 60, 61

were read on this motion to/for                 DISMISSAL

     In this breach of contract action involving the purchase and delivery of coal, purchaser GSP Merrimack LLC alleges that defendant Javelin Global Commodities (UK) Ltd, a coal company, breached their agreement to provide usable coal in the amount ordered. Thus, plaintiff seeks damages from defendant's alleged breach of contract claim under the parties' August 2021 agreement (Count I), and under the parties' July 20, 2022 agreement (Count II); a declaratory judgment that entitles plaintiff to terminate the parties' Master Sale Purchase Agreement (Count III), and the Settlement Agreement (Count IV). Defendant now moves to dismiss Counts I, III, and IV of the complaint; plaintiff opposes defendant's motion. For the reasons below, defendant's motion to dismiss is denied as to Count I and granted as to  Counts III and IV.

## BACKGROUND

     On February 27, 2019, the parties executed a Master Coal Purchase and Sale Agreement ("MSA"), which governed the overall relationship between the parties (NYSCEF # 34, Complaint [Compl], ¶¶ 13, 25-30). In general, the MSA provided that Javelin agrees to deliver coal and GSP agrees to accept and pay for the coal, and that certain actions could result in "events of default," allowing plaintiff to terminate the MSA (*id*.). At issue are the two confirmations, which consist of orders for coal: the August 2021 confirmation (Old Confirmation) and the July 2022 confirmation (New Confirmation). Critical to the issues concerning the Old and the New Confirmations is the Settlement Agreement that came about after defendant failed to perform under the Old Confirmation.

     Back in August 2021, the parties executed a confirmation requiring defendant to deliver 120,000 "short tons"[1] of Northern Appalachian coal to plaintiff by the end of the first quarter of 2022 ("the Old Confirmation") (*id.* ¶ 14; *see also* NYSCEF # 36, Old Confirmation

---

[1] The complaint does not define "short ton."

**650013/2024   GSP MERRIMACK LLC vs. JAVELIN GLOBAL COMMODITIES (UK) LTD.**         **Page 1 of 7**
**Motion No.  003**

dated August 3, 2021). However, at the end of the first quarter, defendant had only delivered 56,0011.97 tons, resulting in a shortfall of 63,988.03 short tons (Compl ¶ 15). During this time, plaintiff had accommodated multiple requests by defendant for schedule flexibility, causing plaintiff to incur approximately $370,000 in additional charges to transport coal (*id.* ¶ 16). On April 4, 2022, plaintiff demanded defendant perform its obligations under the Old Confirmation (*id.* ¶ 17). But defendant never performed these obligations (*id.*).

Due to plaintiff's desperate need for coal to operate its power plants, plaintiff agreed to conditionally release its breach of contract claim under the Old Confirmation and the MSA (*id.* ¶ 3). The parties then proceeded in creating the New Confirmation on July 20, 2022. In the New Confirmation, defendant set a higher overall purchase price and placed additional logistics costs on plaintiff to deliver the coal to its originally contracted destination (*id.* ¶ 19). The New Confirmation reflected plaintiff's specification for coal deliveries not to exceed 3.9% sulfur content to meet regulatory, environmental, and practical limitations and for a delivery date by the end of December 2022 (*id.* ¶¶ 22-23; NYSCEF # 38, New Confirmation ¶¶ 1-2).

The same day, the parties entered into a Settlement Agreement (SA) that describes the parties' understanding of the interaction between the Old and New Confirmations (Compl ¶¶ 20-21). Plaintiff alleges that "the Settlement Agreement conditioned the 'Mutual Release and Discharge' of [plaintiff's] claims against [defendant] 'upon the execution and full performance of . . . the New Confirmation'" (*id.* ¶ 21 quoting NYSCEF # 39, SA ¶ 1 - Mutual Release and Discharge - § 1.1). The following provisions in the Settlement Agreement – "as of the Effective Date and subject to and conditional upon the execution and full performance of (i) this agreement, and (ii) the New Confirmation, by each Party" (SA ¶ 1.1.) – conditioned the release of Old Confirmation claims on defendant's "full performance" of the New Confirmation (Compl ¶ 21).

On December 30, 2022, defendant breached the New Confirmation by providing plaintiff with 22,000 short tons of coal with a sulfur content that was over the maximum allowable limit of 3.9% (*id.* ¶ 32). Defendant admitted to this breach in its February 10, 2023 correspondence (*id.* ¶37). Defendant again breached the New Confirmation by its late delivery of the last load to plaintiff (*id.* ¶ 44). This resulted in a third Event of Default under paragraph 16.2.7 of the MSA (*id.* ¶ 46). Plaintiff accepted the late delivery, but the business relationship between defendant and plaintiff was damaged (*id.* ¶ 47).

On February 3, 2023, plaintiff notified defendant by letter that it was exercising its right to terminate the MSA and New Confirmation effective February 22, 2023 (*id.* ¶ 50). This letter also notified defendant that because the delivery of the unusable coal was outside the quality specified in the New Confirmation, defendant breached the July 20, 2022 Settlement Agreement, which was conditional upon the execution and full performance of the New Confirmation (*id.* ¶ 51). Because defendant breached the New Confirmation by failing to deliver the coal on time and in an unacceptable quality of the coal, plaintiff alleges that plaintiff need not release its claims under the Old Confirmation since defendants failed to meet the condition in the Settlement Agreement that would trigger the release (*id.* ¶¶ 48-49).

650013/2024   GSP MERRIMACK LLC vs. JAVELIN GLOBAL COMMODITIES (UK) LTD.
Motion No.   003

Page 2 of 7

2 of 7

Following the MSA's Termination procedure in paragraphs 16.4 and 16.5, once an Early Termination Date is set, the Non-Defaulting Party is required to calculate the contractual Termination Amount (*id.* ¶ 53). On February 9, 2023, plaintiff notified defendant of the amount calculated as $4,434,857.85 (*id.* ¶ 55). Under the MSA, the termination amount must be paid within two business days of receipt of invoice or notice of termination amount and demand from non-defaulting party (*id.* ¶ 61). Plaintiff claims that defendant has not paid the termination amount, which has accumulated interest at 8% per annum since February 13, 2023 (*id.* ¶ 62).

## Discussion

This motion centers on the parties' interpretation of the Settlement Agreement – whether it is an executory accord or a substitute agreement. Plaintiff claims that under the Settlement Agreement, plaintiff will release defendants' admitted breach of the Old Confirmation when defendants fully perform on the New Confirmation, therefore it is an executory accord. Hence, plaintiff seeks damages for the breach of the Old Confirmation. Defendant argues that because plaintiff cancelled the Old Confirmation and replaced it with a New Confirmation, plaintiff may not sue under the Old Confirmation, therefore the Settlement Agreement is a replacement agreement. Hence, defendant moves to dismiss the plaintiff's claim seeking damages under the Old Confirmation, among related claims.

### Legal Standard

Under CPLR 3211(a)(7), courts must accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible favorable interreference, and determine only whether the facts as alleged fit within any cognizable legal theory (*Leon v Martinez,* 84 NY2d 83, 87-88 [1994] [a court must "accept the facts as alleged in the complaint as true, accord plaintiff [] the benefit of every possible favorable inference, and a determine only whether the facts as alleged fir within any cognizable legal theory"]). "Factual allegations that do not state a viable cause of action, that consist of bare legal conclusions, or that are inherently incredible or clearly contradicted by documentary evidence are not entitled to such consideration" (*Skillgames, LLC v Brody,* 1 AD3d 247, 250 [1st Dept 2003]).

### Count I: Breach of Contract for 2022 Shortfall Under Old Confirmation

Plaintiff's claim under Count I is defendant's breach of contract under the Old Confirmation by failing to deliver the amount of coal as ordered leaving a shortfall of 63,988.03 short tons (Compl ¶ 15). The defendant breached the New Confirmation when the delivery of Barge No.4 loaded 22,000 short tons of coal had a sulfur concentration of 4.13% and a dry sulfur concentration of 4.44% above the 3.9% sulfur concentration maximum (*id.* ¶ 33). Defendant breached again when loading Barge No.5A had an even higher sulfur concentration and plaintiff canceled the delivery of Barge No. 5A (*id.* ¶¶ 39–42).

Plaintiff asserts that they are "entitled to damages under the Old Confirmation because [defendant] allegedly breached the New Confirmation" (NYSCEF # 47, Pltf's MOL at 9). Defendant argues that plaintiff cannot sue under the Old Confirmation because, under the Settlement Agreement, the New Confirmation is a substitute agreement and that they agreed to "cancel;" and "replace" the Old Confirmation with the New Confirmation and all obligations thereunder permanently ceased to exist under New York law (NYSCEF # 44,

650013/2024   GSP MERRIMACK LLC vs. JAVELIN GLOBAL COMMODITIES (UK) LTD.          Page 3 of 7
Motion No.  003

[* 3]                                              3 of 7

Deft's MOL at 11). Plaintiff responds that the Settlement Agreement is actually an "executory accord" pursuant to which plaintiff agreed to drop all Old Confirmation claims only upon full performance of the New Confirmation (Pltf's MOL at 10). Thus, the parties dispute centers over whether the Settlement Agreement (and/or New Confirmation) is an executory accord or a substitute agreement.

As plaintiff explains, an "'executory accord means an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present claim, cause of action, contract or obligation'" (Pltf's MOL at 10 quoting NY Gen Oblig Law § 15-501). In other words, it is an agreement "to accept a future performance in satisfaction of defendant's prior obligations" (*Board of Managers of Alexandria Condominium v Broadway/72nd Associates*, 285 AD2d 422, 424 [1st Dept 2001]).

A substitute agreement is when "the parties have clearly expressed or manifested their intention... [to] substitute for an old agreement." (*Northville Indus. Corp. v Fort Neck Oil Terms. Corp.*, 100 AD2d 865,867 [2d Dept 1984]). The result of a substitute agreement "extinguishes the old one and the remedy for any breach thereof is to sue on the superseding agreement" (*id* at 278). For example, the court in *Napster, LLC v Rounder Records Corp.* found that because the new agreement stated "WHEREAS, Company and Napster have previously entered into a certain Content Agreement... which the parties wish to hereby terminate and supersede" did not show an express and explicit reservation of the right to sue under the prior agreement (761 F Supp 2d 200, 207 [SDNY 2011]). The Whereas clause expressly states the intention to "terminate and supersede" the prior contract (*id.*). The contract in *Napster* also did not show party's intention to sue under the prior agreement because there was no other language in the contract that indicated an intention to reserve the claims that arose under the old contract (*id.* ["[n]othing in the 2006 Agreement indicates the parties' intent to reserve claims based on the 'terminated and superseded' 2001 Agreement"]).

Here the Settlement Agreement is an executory accord because of this language: "[a]s of the Effective Date and subject to and conditional upon the execution and full performance of (i) this agreement, and (ii) the New Confirmation, by each Party" (SA at 3). This expressive language shows the intention of plaintiff to release claims under the Old Confirmation only if the defendant completes the New Confirmation in full. The language makes the Settlement Agreement an executory accord due to the intent to release the previous claims only when the New Confirmation is executed with full performance from the defendant *(see Broadway/72nd Associates*, 285 AD2d at 424 [finding that the wording of the settlement agreement that releases were to be delivered when the repair work was done by a specific tine and no further repairs were needed for an additional period of time to constitute an executory accord]; s*ee also Albee Truck, Inc. v Halpin Fire Equip., Inc.*, 206 AD2d 789, 790 [3d Dept 1994] ["the parties had a dispute on whether the settlement agreement was an executory accord or a substitute agreement, the court found that the agreement constituted an accord because the parties did not intend to 'discharge the existing claim merely upon the making of the accord'"]).

Defendant focuses on the WHEREAS clause in the Settlement Agreement that state (Deft's MOL at 11): "the parties wish to cancel all outstanding obligations in respect of the Contract and replace the contract with a new purchase and sale confirmation to

**650013/2024  GSP MERRIMACK LLC vs. JAVELIN GLOBAL COMMODITIES (UK) LTD.**
**Motion No.  003**

memorialize the mutually agreed terms to govern a transaction for the sale and purchase of coal (the New Confirmation)" (SA at 3) and "in consideration of (i) the release and discharge of GSP Merrimack's outstanding obligations under the Contract; (ii) the release and discharge of Javelin's outstanding obligations under the Contract; and (iii) the execution of the New Confirmation, each party has agreed to release and discharge the other party from its outstanding obligations arising out of or in connection with the contract subject to the terms of this agreement" (*id*).

Defendant argues that the court in *Napster*, stated that under New York law, only an express and explicit reservation of the right to sue under the prior agreement can allow a party to reach back to the terms of the replaced contract (Deft's MOL ¶ 12). Defendant's argument is unpersuasive due to three major flaws. The Whereas clauses here are made in consideration of whether the New Confirmation and Settlement Agreement are executed in full. The Whereas clause on which defendant focuses is not an operative clause of the contract. And the court in *Napster* did not rule solely on the Whereas clauses but also the party's express intent to preserve the original claims (*see Napster*, 761 F Supp 2d at 207). It is clear that the operative clause that releases the Old Confirmation claims is tied to the "full performance" of the Settlement Agreement and the New Confirmation. Further, the final Whereas clause states "each Party has agreed to release and discharge the other party from its outstanding obligations... subject to the terms of this Agreement," which makes the Whereas clauses operative only to the terms the agreement, and the agreement states the discharge is in relation with the performance.

As such, defendant's motion to dismiss plaintiff's Count I for breach of contract under the Old Confirmation is denied.

*Count III and IV: Declaratory Judgment*

Plaintiff seeks a declaratory judgment for breach of the New Confirmation to terminate the MSA (Count III) and judgment seeking a determination on the release and discharge of claims specified in the Settlement Agreement and whether defendant breached the Settlement Agreement.

To Count III, defendant argues that declaratory judgment is incorrect for two reasons: (1) plaintiff is asking to justify past actions given that plaintiffs have already terminated the MSA; and (2) the declaratory judgment claim is duplicative of Count II, which sues for breach of the New Confirmation. Plaintiff counters that a declaration from the court to set out the respective rights and interest under the MSA will serve to clarify the legal issues disputed.

To Count IV, defendant argues that declaratory judgment in Count IV – breach of the Settlement Agreement – is incorrect for similar reasons as in Count III: (1) plaintiff is asking for a declaration based on defendant's past actions, (2) the declaratory judgment is duplicative of Count I, which sues for breach of the Old Confirmation, and (3) the claim fails because the rights under the Old Confirmation cease to exist. Relatedly, defendant argues that this claim is duplicative of the plaintiff's breach of the New Confirmation claim in count II. Plaintiff argues that a declaratory judgment determination is necessary to set out the parties' rights and settle controversy over the Termination Amount. Plaintiff further states that defendant has claimed "full performance" under the New Confirmation, and a

650013/2024  GSP MERRIMACK LLC vs. JAVELIN GLOBAL COMMODITIES (UK) LTD.  Page 5 of 7
Motion No.  003

5 of 7

declaratory judgment would settle whether defendant breached the agreements and whether such breach entitles plaintiff to terminate the MSA (Pltf's MOL at 14). Plaintiff contends that past damages and future obligations are not duplicative claims and presents a question that is independent of whether those damages can be recovered under the terms of the MSA. Plaintiff adds that Count III functions independently of the breach of contract claim because it is independent of whether defendant is still bound to perform under the MSA and New Confirmation.

The purpose of a declaratory judgment is "to declare the respective legal rights of the parties based on a given set of facts, not to declare findings of fact" (*Touro College v Novus University Corp.*, 146 AD3d 679, 679 [1st Dept 2017] quoting *Thome v Alexander & Louisa Calder Found.*, 70 AD3d 88 [1st Dept 2009]). Here, based on their own documents and pleadings, plaintiff has already started the procedure for Termination of the MSA. For example, the complaint includes an entire section under the subheading "GSP Terminates the MSA" (Compl ¶ 50). That section implies that plaintiff sent a termination notice on February 2, 2023—almost eleven months to the day before this case was filed (*id.* ¶ 51). Moreover, plaintiff even attached as exhibits to the complaint the termination notices and an email from plaintiff to defendant discussing the termination amount, both dated February 2023 (NYSCEF # 42, Termination Notice; NYSCEF # 43, Correspondence re Termination amount).

The only future damages plaintiff refers to is the termination amount but fails to explain why it requires a declaratory judgment rather than just suing for the termination amount under breach of contract. A suit for declaratory judgment can be duplicative when there is an adequate, alternative remedy in breach of contract (*see Moghtaderi v Apis Capital Partners,* 205 AD3d 504, 506 [1st Dept 2022] [dismissing plaintiff's declaratory judgment claim as duplicative of its breach of contract claim]).

As for whether Count IV is duplicative of Count I's breach of the Old Confirmation claim, defendant is correct that the breach of the Old Confirmation claim necessarily entails a ruling that defendant breached the Settlement Agreement, in that plaintiff cannot sue under the Old Confirmation unless the Settlement Agreement allows it. Plaintiff still has a claim to rights under the Old Confirmation as it was not released by the Settlement Agreement. Given that the Settlement Agreement *does* allow it, plaintiff's claim is duplicative.

Plaintiff's claims for declaratory judgment is therefore improperly trying to justify their past choice to terminate the MSA rather than receive guidance for a future plan to terminate the MSA. Thus, neither Counts III nor IV are valid for a declaratory judgment claim.

### Conclusion

For the foregoing reasons, it is hereby

ORDERED that the branch of defendant Javelin Global Commodities (UK) Ltd's motion to dismiss plaintiff GSP Merrimack LLC's first cause of action for breach of contract is denied; and it is further

**650013/2024 GSP MERRIMACK LLC vs. JAVELIN GLOBAL COMMODITIES (UK) LTD.**
**Motion No. 003**

**Page 6 of 7**

6 of 7

[* 6]

ORDERED that the branches of defendant Javelin Global Commodities (UK) Ltd's motion to dismiss plaintiff GSP Merrimack LLC's third and fourth causes of action for a declaratory judgment are granted; and it is further

ORDERED that defendant is to serve a copy of this order with notice of entry on plaintiff and the Clerk of the Court within ten days of this order.

This constitutes the Decision and Order of the court.

| | |
|---|---|
| **9/26/2024** | |
| **DATE** | **MARGARET A. CHAN, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**650013/2024   GSP MERRIMACK LLC vs. JAVELIN GLOBAL COMMODITIES (UK) LTD.**
**Motion No.  003**

Page 7 of 7

7 of 7

[* 7]