■ In the Matter of City Club of New York, Inc., et al., Appellants-Respondents, v Hudson River Park Trust, Inc., et al., Respondents-Appellants. [37 NYS3d 123]—

Order and judgment (one paper), Supreme Court, New York County (Joan B. Lobis, J.), entered April 7, 2016, which, among other things, declared that respondents' proposed Pier 55 project, including respondent Hudson River Park Trust's (the Trust) decision to enter into a lease with respondent PIER55, Inc., does not violate the public trust doctrine, denied the petition, and dismissed the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs. Appeals from orders, same court and Justice, entered November 20, 2015, and April 5, 2016, which respectively denied petitioners' motion for expedited discovery and denied their motion to permit supplemental briefing, unanimously dismissed, without costs, as abandoned.

The Trust took the requisite "hard look" at the project's anticipated adverse environmental impacts, and provided a "reasoned elaboration" for the negative declaration, and its determination was not arbitrary and capricious, unsupported by the evidence, or a violation of law (*see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219, 232 [2007]; *see also* CPLR 7803 [3]). The Trust's use of the previously permitted 2005 Pier 54 rebuild design as the "no action" alternative in its SEQRA analysis was "not irrational, an abuse of discretion, or arbitrary and capricious and, consequently, should not be disturbed" (*Matter of Gordon v Rush*, 100 NY2d 236, 244-245 [2003]). The existing record indicates that the Trust adequately considered the cumulative impacts of the Pier 55 project and the nearby Pier 57 project in issuing the negative declaration.

Petitioners lack standing to object to the Trust's failure to issue any bid prospectus with respect to the Pier 55 lease (*see* 21 NYCRR 752.4 [a]), since they never alleged before the article 78 court that they had the wherewithal to submit a plausible competing bid or that, having suitable resources and expertise, they would have done so (*see Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 587 [1998]; *Matter of Montgomery v Metropolitan Transp. Auth.*, 25 Misc 3d 1241[A], 2009 NY Slip Op 52539[U], *4 [Sup Ct, NY County 2009]). We reject petitioners' contention that they need not state what their bid would be since the Trust failed to state what the prospectus would have looked like. Although there is no prospectus, the record contains a detailed statement of the Pier 55 project, with projected costs and the amounts to be

contributed by PIER55's philanthropic principals. Accordingly, petitioners have sufficient information to make a bid.

The construction of Pier 55 outside of Pier 54's historic footprint does not violate the Hudson River Park Act's Estuarine Sanctuary provisions (*see* McKinney's Uncons Laws of NY §§ 1643 [e] [iii]; [l]; 1648 [1], [2], [3] [a], [b], [e] [Hudson River Park Act, L 1998, ch 592, §§ 3, 8 as amended by L 2013, ch 517, §§ 2, 9]). The 2013 amendment to the provisions, referring to a "reconstruction" *or* "redesign" of Pier 54 outside of its historic footprint, makes clear that the legislature was authorizing an entirely new, redesigned structure (Uncons Laws § 1648 [3] [e]). Given the amendment's plain language (*see Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471, 480 [1978]), petitioners' reliance on the statement of one of the amendment's cosponsors, who asserts that she believed that the new structure would be substantially similar to the old Pier 54, is unavailing (*see Fletcher v Kidder, Peabody & Co.*, 81 NY2d 623, 633 [1993], *cert denied* 510 US 993 [1993]).

There is no case law in New York applying the public trust doctrine to state, as opposed to municipal, parkland (*see Matter of Niagara Preserv. Coalition, Inc. v New York Power Auth.*, 121 AD3d 1507, 1511 [4th Dept 2014], *lv denied* 124 AD3d 1419 [4th Dept 2015], *lv denied* 25 NY3d 902 [2015]). We need not decide whether to follow the Fourth Department because even if the doctrine applies here, the project and lease do not violate it. The Hudson River Park Act expressly authorizes the use of the park for revenue-generating events, including performing arts events (*see* Uncons Laws §§ 1642 [c], [e]; 1643 [h] [ii]; 1647 [10] [a]), and courts have upheld the charging of fees for park facilities, provided that overall public access is not unduly constrained (*see Union Sq. Park Community Coalition, Inc. v New York City Dept. of Parks & Recreation*, 22 NY3d 648, 654-655 [2014]; *Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commn. of City of N.Y.*, 259 AD2d 26, 36 [1st Dept 1999]). Here, beyond the performances for which Pier 55 is designed, most of the park-like pier, most of the time, will be devoted to even more fundamental "public park uses, including passive and active public open space uses" (Uncons Laws § 1643 [h] [i]). Additionally, the lease requires that 51% of the performances be free or low-cost.

We have considered petitioners' remaining contentions and find them unavailing. Concur—Friedman, J.P., Richter, Gische and Kahn, JJ.