Filip Saska, TOMÁ NADRCHAL, and STEPHEN MICHELMAN, Plaintiffs,

against
The Metropolitan Museum of Art, Defendant.

Theodore Grunewald and PATRICIA NICHOLSON, Plaintiffs,
against
The Metropolitan Museum of Art, THOMAS P. CAMPBELL (DIRECTOR AND CHIEF EXECUTIVE OFFICER), EMILY RAFFERTY (PRESIDENT), and DANIEL BRODSKY (CHAIRMAN OF THE BOARD OF TRUSTEES, OF THE METROPOLITAN MUSEUM OF ART), Defendants.

650775/2013

Emery Celli Brinckerhoff & Abady LLP, for the Saska Plaintiffs.
Hiller, PC, for the Grunewald Plaintiffs.
Arnold & Porter LLP, for defendants.


Shirley Werner Kornreich, J.

Motion sequence numbers 002 and 003 in the Saska Action and motion sequence number 002 in the Grunewald Action are consolidated for disposition.
In the Saska Action, the plaintiffs and proposed class representatives, Filip Saska, Tomá Nadrchal, and Stephen Michelman (the Saska Plaintiffs), and the defendant, the Metropolitan Museum of Art (the Museum), jointly move for preliminary approval of their class action settlement agreement (the Original Settlement Agreement) (Saska Action, Dkt. 67).[FN1]
Saska Action, Seq. 002. The plaintiffs in the Grunewald Action, Theodore Grunewald and Patricia Nicholson (the Grunewald Plaintiffs), oppose preliminary approval. Prior to ruling on the motion, the Original Settlement Agreement was amended (the Amended Settlement Agreement) (Saska Action, Dkt. 116). The Saska Plaintiffs and the Museum now jointly move for preliminary approval of the Amended Settlement Agreement, which also is opposed by the Grunewald Plaintiffs. Saska Action, Seq. 003. 
In the Grunewald Action, the Museum and three of its directors, Thomas P. Campbell, Emily Rafferty, and Daniel Brodsky (the Directors), move to dismiss the fifth, sixth, and seventh causes of action in the Grunewald Plaintiffs' amended complaint (the Grunewald AC) (Grunewald Action, Dkt. 39).[FN2]
Grunewald Action, Seq. 002. The Grunewald Plaintiffs oppose dismissal of the fifth and sixth causes of action and have withdrawn the seventh cause of action. 
For the reasons that follow, the court grants preliminary approval of the Amended Settlement Agreement and dismisses the fifth and sixth causes of action in the Grunewald AC.
I. Background
As the court explained in its previous decision, "[t]he instant actions concern [the Museum's] 'pay what you wish' admissions policy. At the heart of these cases is whether this policy and the manner in which it is enforced runs afoul of General Business Law (GBL) § 349, a 19th century statute [the 1893 Statute] which provided funding to the Museum, and the lease between the Museum and the City of New York (the City), executed in 1878 (the Lease)." Saska v Metro. Museum of Art, 42 Misc 3d 548, 549 (Sup Ct, NY County 2013) (Saska I), aff'd 125 AD3d 438 (1st Dept 2015) (Saska II), lv denied 27 NY3d 907 (2016). In Saska I, by order dated October 29, 2013, this court granted the Museum's motion to "dismiss plaintiffs' causes of action based on the [1893 Statute] and the Lease." See id.[FN3]
Specifically, the court held that plaintiffs [*2]have no private right of action under the 1893 Statute and cannot sue for breach of the Lease as third party beneficiaries. See id. at 556-62. On February 5, 2015, in Saska II, the Appellate Division affirmed. On June 7, 2016, the Court of Appeals denied plaintiffs' motion for leave to appeal.
The parties did not commence discovery in earnest until after the Appellate Division issued its decision in Saska II. On October 27, 2015, after issue was joined and the parties' settlement negotiations broke down, the parties in both actions [FN4]
appeared for a preliminary conference, at which a class discovery schedule was set.[FN5]
At a compliance conference on November 17, 2015, all paper discovery issues were resolved and the parties were ordered to enter into a stipulation governing electronic discovery (ESI). After further telephone conferences regarding ESI, the parties in the Saska Action notified the court that they sought to stay discovery because a settlement had been reached. 
Around the same time, on January 19, 2016, the Grunewald Plaintiffs filed their AC. The Grunewald AC asserts the following causes of action, numbered here as in the AC: (1) breach of the Lease under a third-party beneficiary theory for charging admission to the Museum; (2) violation of the 1893 Statute for charging admission to the Museum;[FN6]
(3) violation of GBL § 349 for having a deceptive admission policy; (4) fraud, for having a deceptive admission policy; (5) violation of the public trust doctrine because the Museum, which is located in Central Park, is not being used for a proper "park purpose" given its refusal to create a Central Park entrance;[FN7]
[*3](6) violation of the public trust doctrine on the ground that the Museum is not being used for a proper "park purpose" due to its admission policy;[FN8]
and (7) a claim for injunctive relief under State Environmental Quality Review Act (SEQRA) § 617(b) compelling the Museum to conduct an environmental assessment in connection with the construction of a Central Park entrance. See Grunewald Action, Dkt. 39. The Grunewald Plaintiffs have withdrawn the SEQRA claim. See Grunewald Action, Dkt. 57 at 2.
While the motion to dismiss was being briefed, on February 26, 2016, the Saska Plaintiffs and the Museum executed the Original Settlement Agreement. See Saska Action, Dkt. 67. On February 29, 2016, the Saska Plaintiffs and the Museum jointly moved for preliminary approval of the Original Settlement Agreement. Section 1 of the Original Settlement Agreement provides for the following settlement class:
All persons who, at any time from March 5, 2007 to the date of final approval of the [Original] Settlement Agreement, purchased either (i) admission to the exhibition halls of [the Museum] (in person, online, or through a third party vendor, in any location, using any form of payment) or (ii) a [Museum] membership.
See Saska Action, Dkt. 67 at 3-4.
Section 4 provides that "as consideration for the settlement of [the Saska Action] [the Saska Plaintiffs and the Museum] will jointly propose to the Court the entry of a Judgment in substantially the form annexed hereto as Exhibit A" [see id. at 4], which, among other things, provides for each of the Saska Plaintiffs to receive a $1,000 incentive award [see id. at 15-16] and for their counsel, Emery Celli Brinckerhoff & Abady LLP (ECBA), to receive $350,000 in attorneys' fees [see id. at 15] to be paid by the Museum, on condition that the court approves these amounts. See Saska Action, Dkt. 68 at 2.
Section 6 of the Original Settlement Agreement contains broad mutual releases, but with respect to the class,[FN9]
only claims for injunctive relief, and not claims for monetary damages, are released. See Saska Action, Dkt. 67 at 5. Specifically, section 6(b) provides:
All other members of the Settlement Class release only claims for equitable relief and for attorneys' fees and expenses, and shall not be deemed to have settled, discharged or released the Museum from any claim for monetary damages. 
See id. (emphasis added).
Section 11 (see id. at 7) sets forth the parties' proposed notice to the class, and includes both the establishment of a website (www.metfees.com) and contains a proposed form of notice [see [*4]Saska Action, Dkt. 70] for publication in various newspapers, including the New York Times, the New York Daily News, and AM New York, as annexed in Exhibit D. See Saska Action, Dkt. 71. 
Most pertinent, and a principal subject of the Grunewald Plaintiffs' objections, section 15 contains an 8-part proposed consent decree that would be binding on the Museum for 78 months (i.e., 6.5 years). See Saska Action, Dkt. 67 at 10-15. The consent decree, set forth in sections 15(a)-(h), provides:
a. Disclosures of "pay what you wish" admissions policy—During the term of the Consent Decree, the Museum shall provide disclosures ("Pay What You Wish Disclosures") of its "pay what you wish" admissions policy in the following manner: i. The Museum will maintain a sign or signs plainly visible to visitors approaching the ticket cashiers informing visitors of the Museum's "pay what you wish" admissions policy and the suggested admission amounts by each category of visitor. Such sign(s) will disclose the Museum's "pay what you wish" admissions policy in a manner substantially similar to Exhibit G hereto [see Saska Action, Dkt. 74], it being agreed that signage with identical content in the same order and spacing, and in the same relative type font sizes, and with the same prominence of display and prominence of placement as disclosures currently in use, shall be "substantially similar" regardless of other changes in the design or presentation.
ii. The Museum's website will disclose the Museum's "pay what you wish" admissions policy in a manner substantially similar to Exhibit H hereto [see Saska Action, Dkt. 75], it being agreed that disclosure of the admissions policy with identical content in the same order and spacing, and in the same relative type font sizes, with the same prominence of display and prominence of placement as disclosures currently in use, shall be "substantially similar" regardless of other changes in the design or presentation.
iii. The Museum's on-site ticket kiosks and the first screens of the transaction pages will disclose the Museum's "pay what you wish" admissions policy in a manner substantially similar to Exhibit I hereto [see Saska Action, Dkt. 76], it being agreed that disclosure of the admissions policy with identical content in the same order and spacing, and in the same relative type font sizes, with the same prominence of display and prominence of placement as disclosures currently in use, shall be "substantially similar" regardless of other changes in the design or presentation.
b. Third party websites—The Museum will include a provision in its contracts with CityPass, New York Pass, Explorers Pass and NYCitAll Pass ("Third Party Vendors") that each Third Party Vendor shall disclose the Museum's "pay what you wish" admissions policy, such that purchasers can reasonably have been notified of such policy prior to purchasing a product which includes admission to the Museum. The Museum will use commercially reasonable efforts to enforce such contract provisions.
c. Future changes in suggested admission amounts—The Museum may change the amounts of the suggested admission amounts under the existing "pay what you wish" admissions policy. If it does so, it may change the amounts of the suggested prices shown on its Pay What You Wish Disclosures. Any such change, if limited to changing the amounts of the suggested prices, will not require the consent of the Class Plaintiffs or the approval of the Court.
d. Staff training/ evaluation—The Museum will continue its existing policies of (i) not evaluating Visitor Services staff according to individual sales amounts, and (ii) providing Visitor Services staff with introductory training and quarterly refresher training programs on the "pay what you wish" policy and procedures for explaining that policy to visitors. Such procedures shall require that each cashier either ask how much visitors would like to pay or state that visitors may pay any amount they choose, and that, in accordance with training procedures currently in place, Visitor Services staff working as "line-busters" explain to visitors that they may pay less than the full suggested admission amount at the cashier's desk if they continue waiting in line. 
e. Future changes in Museum admission policy—The Museum may, without seeking consent of the Class Plaintiffs or approval of the Court, change its admissions policy to charge some or all visitors mandatory admission fees (i.e., fees charged on a basis other than the "pay what you wish" system), subject to any required governmental approvals. Any such change shall be deemed an "Admissions Policy Change." The Museum will announce any Admissions Policy Change by means of a press release, with a copy provided simultaneously to Class Counsel, at least 30 days before the effective date of the Admissions Policy Change. 
f. Revised disclosures following changes in Museum admission policy—Immediately upon the effective date of any Admissions Policy Change, the Museum may revise the signs at the entrances to the Museum, the Museum's web site, and communications with Third Party vendors (all such revisions being referred to as "Revised Disclosures") to reflect the Admissions Policy Change. 
g. Court review and approval of Revised Disclosures—Within 30 days after the effective date of any Admissions Policy Change, the Museum will apply to the Court, with notice to Class Counsel, for an order concerning application of the Consent Decree to the Revised Disclosures describing such Admissions Policy Change. If the Admissions Policy Change provides for a "pay what you wish" policy for some class or classes of visitors, the Court will review the Revised Disclosures and shall approve them if they disclose the availability of "pay what you wish" admission to such visitors in a manner substantially similar to the terms of paragraphs 15.a.i.-iii., above, governing Pay What You Wish Disclosures. On any such motion the Museum, as movant, shall bear the burden of persuading the Court that no such conflict or incompatibility exists. If the Admissions Policy Change does not provide [*5]for a "pay what you wish" policy for any class of visitors, the Court will enter an order stating that the Consent Decree is inapplicable to such Revised Disclosures. 
h. Availability of "pay what you wish" admission—During the term of the Consent Decree, so long as the Museum's admissions policy permits some or all visitors to enter the Museum's exhibition halls on a "pay what you wish" basis, the Museum will ensure that eligible visitors are provided with a reasonable opportunity to purchase admission at the public entrance to the Museum for less than the full suggested admission fee if they choose.
See id. (bold and underline in original). Section 20 retains this court's jurisdiction over the parties during the term of the consent decree, and section 21 provides that the parties submit to this court's exclusive jurisdiction in any suit related to their settlement. See id. at 17-18. In section 24, the Museum "specifically denies any and all liability in this Action," and states that "[i]t is expressly understood and agreed that the Museum, by entering into this Settlement Agreement, is not admitting any liability or wrongdoing and is not admitting the truth of any allegations or circumstances, and is not waiving any defense or affirmative defense." See id. at 18.

On March 9, 2016, the Grunewald Plaintiffs filed opposition to the motion for preliminary approval of the Original Settlement Agreement. They argue that two of the requirements for class certification — adequacy of representation by the class representatives and superiority of the action being resolved on a class basis — are not present. They also object to the settlement resolving only claims for injunctive relief, not claims for monetary relief. They further complain that the Saska Plaintiffs and their counsel have underestimated the strength of their claims and contend that the Original Settlement Agreement insufficiently benefits the class because, in their view, it inadequately remedies the alleged deceptive practices. Additionally, they argue that no settlement permitting any suggested or mandatory admission should be approved because, despite the holdings of this court and the Appellate Division, the Lease and the 1893 Statue (and, relatedly, the public trust doctrine at issue in the Grunewald Action) require free admission. As discussed below, the court finds the Grunewald Plaintiffs' objections to be unpersuasive, particularly at the preliminary approval stage. 
After conferencing these issues with the court and after further settlement discussions, on June 30, 2016, the Saska Plaintiffs and the Museum entered into the Amended Settlement Agreement. See Saska Action, Dkt. 116. The basic structure of the Amended Settlement Agreement is the same, with the primary difference being the emphasis, by way of larger text, on the "The amount you pay is up to you" and "Please be as generous as you can" language in the proposed signage.[FN10]
Compare Saska Action, Dkt. 74, with Saska Action, Dkt. 123. That same [*6]day, on June 30, 2016, the Saska Plaintiffs and the Museum jointly moved for preliminary approval of the Amended Settlement Agreement. On July 8, 2016, the Grunewald Plaintiffs filed opposition because, according to them, the Amended Settlement Agreement was merely a "modest improvement" over the Original Settlement Agreement and suffered from the same flaws set forth in their original opposition. See Saska Action, Dkt. 130 at 2-3.[FN11]

II. Discussion
Since the Grunewald Plaintiffs' objections to the Amended Settlement Agreement are somewhat intertwined with their own claims for breach of the public trust doctrine, the court first addresses the motion to dismiss by the Museum and the Directors and then addresses the issue of preliminary approval.
A. Motion to Dismiss the Grunewald Plaintiffs' Public Trust Claims
On a motion to dismiss, the court must accept as true the facts alleged in the complaint as well as all reasonable inferences that may be gleaned from those facts. Amaro v Gani Realty Corp., 60 AD3d 491 (1st Dept 2009); Skillgames, LLC v Brody, 1 AD3d 247, 250 (1st Dept 2003), citing McGill v Parker, 179 AD2d 98, 105 (1st Dept 1992); see also Cron v Hargro Fabrics, Inc., 91 NY2d 362, 366 (1998). The court is not permitted to assess the merits of the complaint or any of its factual allegations, but may only determine if, assuming the truth of the facts alleged and the inferences that can be drawn from them, the complaint states the elements of a legally cognizable cause of action. Skillgames, id., citing Guggenheimer v Ginzburg, 43 NY2d 268, 275 (1977). Deficiencies in the complaint may be remedied by affidavits submitted by the plaintiff. Amaro, 60 NY3d at 491. "However, factual allegations that do not state a viable cause of action, that consist of bare legal conclusions, or that are inherently incredible or clearly contradicted by documentary evidence are not entitled to such consideration." Skillgames, 1 AD3d at 250, citing Caniglia v Chicago Tribune-New York News Syndicate, 204 AD2d 233 (1st Dept 1994). Further, where the defendant seeks to dismiss the complaint based upon documentary evidence, the motion will succeed if "the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law." Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 (2002) (citation omitted); Leon v [*7]Martinez, 84 NY2d 83, 88 (1994).

It is a well settled "principle that parkland is impressed with a public trust, requiring legislative approval before it can be alienated or used for an extended period for non-park purposes." Friends of Van Cortlandt Park v City of New York, 95 NY2d 623, 630 (2001) (collecting cases; emphasis added). "Under the public trust doctrine, a land owner cannot alienate land that has been impliedly dedicated to a public use without obtaining the approval of the legislature." Glick v Harvey, 25 NY3d 1175, 1180 (2015). "A party seeking to establish such an implied dedication and thereby successfully challenge the alienation of the land must show that (1) [t]he acts and declarations of the land owner indicating the intent to dedicate his land to the public use [are] unmistakable in their purpose and decisive in their character to have the effect of a dedication and (2) that the public has accepted the land as dedicated to a public use." Id. (quotation marks omitted). "While structures that have no connection with park purposes are not permitted to encroach upon parkland without legislative approval, structures and conveniences that are common incidents of a park serve park purposes so as not to implicate the public trust doctrine as long they contribute to or facilitate the use and enjoyment of the park." Friends of Petrosino Square v Sadik-Khan, 126 AD3d 470 (1st Dept 2015) (emphasis added). 
In Williams v Gallatin, 229 NY 248 (1920), the Court of Appeals explained:

 A park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. It need not, and should not, be a mere field or open space, but no objects, however worthy, such as courthouses and schoolhouses, which have no connection with park purposes, should be permitted to encroach upon it without legislative authority plainly conferred, even when the dedication to park purposes is made by the public itself and the strict construction of a private grant is not insisted upon.

Id. at 253 (emphasis added). In Williams, the Court held that "[a]rt may aid or supplement nature in completing the attractions offered." See id. at 254. Moreover, in Tuck v Heckscher, 29 NY2d 288 (1971), the Court explicitly held that the Museum is "unquestionably a proper park use." See id. at 294. For this reason, the Grunewald Plaintiffs have no basis to contend that the Museum's existence in Central Park, by virtue of the fact that it is an art museum, is not a proper park purpose.

Indeed, there is ample precedent that myriad types of use that benefit the public may occur in a park without violating the public trust doctrine. For instance, the Court of Appeals recently rejected the argument that a restaurant in Union Square Park is not a proper park purpose, holding that the public trust doctrine is not a valid means to assert a claim that better uses of a park may exist. See Union Square Park Community Coalition, Inc. v NY City Dep't of Parks & Recreation, 22 NY3d 648, 654 (2014) ("[The Park] Commissioner enjoys broad discretion to choose among alternative valid park purposes. Observing that restaurants have long been operated in public parks, [in 795 Fifth Ave. Corp. v City of New York, 15 NY2d 221 (1965),] we rejected plaintiffs' public trust claim, holding that they could show only a 'difference of opinion' as to the best way to use the park space and that this 'mere difference of opinion [was] not a demonstration of illegality' (id.).") (emphasis added); see also Friends of Petrosino Square, 126 AD3d at 470-71 ("The use of a portion of parkland for a bicycle rack used for the [*8]parking of bicycles, including the CitiBike Share station at Petrosino Square, is an appropriate incidental use of parkland to the extent it contributes to or facilitates the use and enjoyment of the park and does not substantially undermine[] the use and enjoyment of the park."). In other words, the public trust doctrine is not a proper method of expressing disagreement with how park space is used; it is only a means to object to uses that, categorically, are not legally considered to be proper park uses. As noted earlier, the Grunewald Plaintiffs make clear that they are, at least in part, registering complaints about the way in which the Museum is run. That type of complaint is precisely the sort of "difference of opinion" that does not give rise to a valid public trust claim.
Despite this authority, the Grunewald Plaintiffs contend that charging any mandatory admission, even a penny, vitiates the Museum's status as a proper park purpose. They also contend that the lack of an entrance that directly connects patrons from Central Park to the Museum is an omission that renders the Museum an improper park purpose. 
These arguments have no merit. They are premised on a fundamental misunderstanding of the legal notion of a "park purpose". Whether a particular use amounts to a proper park purpose does not turn on the legality of all activities related to that use. There simply is no authority to support the proposition that a proper park purpose suddenly becomes improper the moment any legal or regulatory violation becomes extant. Or, as the Museum aptly puts it:

 It makes no sense to argue, as [the Grunewald] Plaintiffs do, that the decision on whether a given use is a park use or a non-park use can oscillate back and forth according to whether the user is in compliance with the multiple regulatory laws to which it may be subject. A restaurant located in a park, for example, may violate health laws governing food storage—but that violation would not turn it into something other than a restaurant. Plaintiffs do not contend that the Metropolitan Museum is something other than an art museum, and any such contention would be frivolous.

See Dkt. 56 at 10.
Simply put, the Grunewald Plaintiffs maintain that the Museum is charging an admission fee in violation of the 1893 Statue and the Lease and this impropriety undermines the Museum's status as a proper park purpose. However, this court has held, in a decision affirmed by the Appellate Division, that the Grunewald Plaintiffs lack standing to complain about the alleged statutory and lease violations. The Grunewald Plaintiffs' proper park purpose argument is an attempted end run around that ruling by shoehorning those claims within the rubric of the public trust doctrine. That argument is a bad fit. The question under the public trust doctrine is not whether the Museum's admission policy is permissible under its lease and an 1893 appropriations statute, but whether, by employing its admission policy, the Museum is somehow no longer a proper use of Central Park. 
The legality of the Museum's admission policy (an issue on which the court does not opine) does not, at least not under these circumstances, affect the proper nature of the Museum's presence in Central Park. The public trust doctrine is about ensuring that parkland is not used for private proposes that do not further the public's enjoyment of the park. A nominal entrance fee that effectively excludes no one from the Museum does not unduly constrain the public's access and cannot be considered an improper park purpose. In point of fact, the First [*9]Department has held that charging fees for park use is not necessarily problematic. See City Club of NY, Inc. v Hudson River Park Trust, Inc., 142 AD3d 803 (1st Dept 2016) ("courts have upheld the charging of fees for park facilities, provided that overall public access is not unduly constrained") (emphasis added); Committee to Preserve Brighton Beach & Manhattan Beach, Inc. v Planning Comm'n of City of New York, 259 AD2d 26, 36 (1st Dept 1999) ("we reject petitioners' argument that the public trust doctrine was violated. Charging a fee for some of the services provided by the facility does not negate the overall recreational purpose of the concession"). Here, where anyone can enter the Museum for a penny,[FN12]
there is no basis to claim that the public's access to the Museum is unduly constrained by the Museum's admission policy. 
Finally, the Grunewald Plaintiffs' contention that the Museum must have a Central Park entrance has no merit. This argument is unsupported by any legal authority. Whether the Museum had such an entrance in the past is of no moment. There is no statutory, regulatory, or contractual basis to compel the Museum to construct and maintain a Central Park entrance. Nor are the Grunewald Plaintiffs the arbiters of the Museum's design or operational logistics. As noted earlier, the Grunewald Plaintiffs proffer a litany of complaints about how the Museum is run and claim that the Museum is supposedly being pilfered by its managers. These issues (especially the accusations regarding the Museum finances)[FN13]
have no legal relevance to this case and obfuscate the clear lack of merit in plaintiffs' public trust claims. As the Court of Appeals and First Department have made clear, the public trust doctrine is not a vehicle to disagree with how parks are run, nor is this court the proper forum to vent one's views on those that operate the Museum. As this court previously explained: "[n]either [the Grunewald Plaintiffs] nor the courts should be permitted to substitute their judgment for the discretionary management of public business by public officials, as neither have been lawfully charged with that responsibility. [The Grunewald Plaintiffs], however sincerely motivated, may not interpose themselves and the courts into the management and operation of public enterprises." See Saska I, 42 Misc 3d at 562, citing Roberts v Health and Hospitals Corp., 87 AD3d 311, 326 (1st Dept 2011), quoting Jones v Beame, 45 NY2d 402, 407 (1978).
In sum, that the Museum charges a nominal admission fee and lacks a Central Park entrance does not mean that the Museum does not serve as a proper park purpose. Whether the Grunewald Plaintiffs' proposals would result in the Museum better serving the public is legally irrelevant and an issue on which the court will not opine. Once, as here, a proper park purpose is established, the Grunewald Plaintiffs' public trust claims fail. They are dismissed.
[*10]B .Preliminary Approval of the Amended Settlement Agreement
CPLR 908 provides that a class action cannot be settled or discontinued without court approval. See Desrosiers v Perry Ellis Menswear, LLC, 139 AD3d 473 (1st Dept 2016). There is no explicit requirement under Article 9 of the CPLR for preliminary approval. However, as this court has observed, "New York's courts have recognized that its class action statute is similar to the federal statute," i.e., Rule 23 of the Federal Rules of Civil Procedure. See Fiala v Met. Life Ins. Co., 27 Misc 3d 599, 606 (Sup Ct, NY County 2010), citing In re Colt Indus. S'holder Lit., 77 NY2d 185, 194 (1991); see also Vasquez v Nat'l Secs. Corp., 48 Misc 3d 597, 600 (Sup Ct, NY County 2015) ("it is well established that our state courts look to Rule 23 of the Federal Rules of Civil Procedures to inform New York's class action law."), aff'd 139 AD3d 503 (1st Dept 2016), citing City of New York v Maul, 14 NY3d 499, 510 (2010). It is common practice in federal court to seek preliminary approval of a class action settlement prior to scheduling a final approval hearing and providing the class with notice thereof. See, e.g., Bhatia v Piedrahita, 756 F3d 211, 216-17 (2d Cir 2014); In re Wachovia Equity Sec. Lit., 2012 WL 2774969, at *2 (SDNY 2012). This court, therefore, has adopted the practice of entertaining motions for preliminary approval. See, e.g., City Trading Fund v Nye, 46 Misc 3d 1206(A) (Sup Ct, NY County 2015). 
The standard for granting final approval of a class action settlement, which is well established,[FN14]
is not the same as the standard for granting preliminary approval. Rather, "[p]reliminary approval is the first step in the settlement process. Preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." Illoldi v Koi NY LLC, 2016 WL 3099372, at *1 (SDNY 2016). That is because "[p]reliminary approval 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." In re Platinum & Palladium Commodities Lit., 2014 WL 3500655, at *11 (SDNY 2014), quoting In re Traffic Exec. Ass'n-E. Railroads, 627 F2d 631, 634 (2d Cir 1980) ("granting [preliminary approval] is not tantamount to a finding that the settlement is fair and reasonable.") (emphasis added). Thus, "[a trial] court should preliminarily approve a proposed settlement which 'appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not [*11]improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval.'" In re Platinum, 2014 WL 3500655, at *11 (emphasis added), quoting In re Nasdaq Mkt.-Makers Antitrust Lit., 176 FRD 99, 102 (SDNY 1998). If the "proposed Settlement Agreement falls within the range of reasonableness," it "meets the requirements for preliminary approval such that notice to the Class Members is appropriate." See Illoldi, 2016 WL 3099372, at *21; see also Mark Fabrics, Inc. v Gmac Commercial Credit LLC, 2005 WL 6216029 (Sup Ct, NY County 2005) (Cahn, J.) ("The court granted plaintiff's motion for preliminary approval of the settlement [because] the court found 'that the proposed settlement contemplated by the Agreement is within the range of fairness and reasonableness.'").
As an initial matter, at this juncture, the court declines to delve as deeply into the merits of the proposed settlement as the Grunewald Plaintiffs would prefer. That sort of review is more properly conducted after a hearing on final approval, which will afford the entire class the opportunity to be heard. That being said, the court finds it appropriate to reject four unpersuasive arguments made by the Grunewald Plaintiffs. 
First, the claim being settled is for the allegedly deceptive nature of the Museum's admission policy. Plaintiffs' claim that the Museum is legally prohibited from charging admission was dismissed and provides no basis to upend the proposed settlement. As the Saska Plaintiffs persuasively contend, the Grunewald Plaintiffs "could not have expected the Museum to agree to do things the Museum would not have had to do even if it lost in [this case]." See Saska Action, Dkt. 112 at 5. Second, the fact that the settlement does not provide for damages is not a valid objection since only injunctive claims are being settled.[FN15]
Third, the relative wisdom of the alternative signage proposal proffered by the Grunewald Plaintiffs is an issue more properly reserved for the final approval hearing. The court, at the final approval stage, will assess the benefits of the proposed signage change when "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." See In re Colt Indus., 155 AD2d at 160. Fourth, the court rejects the notion that further discovery should be compelled before a settlement is approved. One of the drivers of this settlement, and most settlements, is the avoidance of the significant expense of discovery.[FN16]

With respect to preliminary approval, given the importance of the Museum to the City and to the millions of its patrons, there surely are views on the wisdom of the proposed settlement that may well differ from those of the Grunewald Plaintiffs. At this juncture, the court is only concerned with whether the terms of the Amended Settlement Agreement fall within a reasonable range of approval and whether they are the product of bona fide arms' length negotiation. That is the case here and, consequently, the court finds there to be probable cause to submit the proposed settlement for evaluation by the class. This court's primary objection — the size and font of a portion of the proposed signage in the Original Settlement Agreement — has been rectified in the Amended Settlement Agreement. The court is convinced, at least for the purpose of preliminary approval, that the proposed signage is a significant improvement over the status quo. To the extent the Grunewald Plaintiffs categorically assert that settlement at this juncture is inappropriate given the supposed strength of the GBL § 349 claims, the court disagrees. Leaving aside the fact that "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere" [see Illoldi, 2016 WL 3099372, at *2], both the merits and the class aspects of this case raise complicated legal and factual issues that create enormous uncertainty. The Saska Plaintiffs and the Museum contend, and the court [*12]agrees, that the specter of expensive and extensive fact and expert discovery, along with the expense of briefing numerous complicated legal issues, plus the cost and uncertainty of trial and appeal, are proper reasons to settle.
With respect to conditional class certification, which should be done before granting preliminary approval so the correct universe of people are provided with notice of the final approval hearing [see In re HSBC, 49 Misc 3d 1211(A), at *4], certification is clearly warranted. While the Grunewald Plaintiffs are not fans of the proposed settlement, they do not proffer any serious qualms about this case's suitability for resolution on a class basis. The numerosity factor is present given the millions of people affected by the Museum's admission policy. See Borden v 400 E. 55th St. Assocs., L.P., 24 NY3d 382, 399 (2014) ("the legislature contemplated classes involving as few as 18 members" and "numerosity is presumed at a level of 40.") (citations omitted). The predominance and typicality factors are present since all of the Museum's patrons are exposed to the same policy and, thus, "the predominant legal question involves one that applies to the entire class." See id. The superiority factor, as a result, militates in favor of class resolution since individual adjudication would be highly inefficient and, as injunctive relief is the only relief sought or released by the settlement, a single class resolution is the most logical approach. See id. at 400 ("class certification is superior to having these claims adjudicated individually."). It would be impracticable for the Museum's admission policy and the signage to be subject to change based on millions of individual adjudications. A single resolution of these issues is sensible.
Likewise, there is no proffered reason to doubt that the Saska Plaintiffs are adequate class representatives. Their interests appear to be aligned with the class. See id. at 399-400. The court, moreover, finds their counsel at ECBA to be particularly well suited to represent the class, not only due to that firm's reputation, but also because, in this court's experience with their counsel in this action, the quality of their representation has been exemplary. The court does not doubt their capacity to competently litigate this case on the merits. On the other hand, the court believes the complexity of the issues, the expense and length of litigation, and the risks inherent in such litigation engendered a bona fide arms' length settlement. 
Finally, the court finds that the proposed plan for publication of notice is sufficient and likely to reach the members of the putative class, particularly in light of notice being provided in the national edition of the New York Times (in addition to various local New York papers and online). See Saska Action, Dkt. 120. The court, therefore, grants preliminary approval of the Amended Settlement Agreement. Accordingly, it is
ORDERED that the motion by the Museum and the Directors to dismiss the fifth and sixth causes of action in the Grunewald AC is granted, and said causes of action, along with the first and second causes of action (which were previously dismissed by the court but repleaded in the Grunewald AC), are dismissed with prejudice; and it is further
ORDERED that the seventh cause of action in the Grunewald AC is permitted to be withdrawn and is dismissed without prejudice; and it is further 
ORDERED that the motion by the Saska Plaintiffs and the Museum for preliminary approval of the Amended Settlement Agreement is granted, and the motion for preliminary approval of the Original Settlement Agreement is denied as moot; and it is further
ORDERED that the parties shall jointly contact the court within 7 days of the entry of this order on the NYSCEF system to discuss the scheduling of a hearing on final approval and the submission of a new proposed implementing order regarding preliminary approval and notice to the class. 
Dated: November 10, 2016
ENTER:
__________________________
J.S.C.



Footnotes

Footnote 1:References to "Saska Action, Dkt." and "Grunewald Action, Dkt." followed by a number refer to documents filed in those actions on the NYSCEF system. 


Footnote 2:It is unclear if the Grunewald AC is actually asserting these claims against the Directors (as opposed to only against the Museum). Construed liberally, and in light of the injunctive relief on these claims being sought against all "defendants" [see Grunewald Action, Dkt. 39 at 48] and the fact that the notice of motion indicates that all of the defendants are moving to dismiss, the court assumes that the Directors are named as defendants on these claims.

Footnote 3:Saska I extensively sets forth the history of the 1893 Statute, the Lease, the Museum's admission policy, and the procedural history of these actions. See id. at 549-56. Those facts will not be repeated here. That being said, this court has never addressed the merits of plaintiffs' claim that the Museum's admissions policy is deceptive and, therefore, violative of GBL § 349. The GBL § 349 claim was not at issue on the prior motions to dismiss.


Footnote 4:The Museum is represented by the same counsel in both actions. The Saska and Grunewald Plaintiffs are represented by separate counsel. Also, as previously noted, the Saska Action is a class action while the Grunewald Action is not.


Footnote 5:The court largely denied the Grunewald Plaintiffs' requests for merits (as opposed to class) discovery prior to a decision on class certification.

Footnote 6:The first two causes of action were dismissed in Saska I, a dismissal affirmed by the Appellate Division in Saska II. Nonetheless, they were refiled, purportedly, to preserve the Grunewald Plaintiffs' right to appeal to the Court of Appeals. The Court of Appeals has since denied leave. The court, therefore, sua sponte dismisses the first two causes of action because they no longer have a possibility of being revived. 


Footnote 7:As explained by the Museum, this cause of action is only asserted by Grunewald:
Ms. Nicholson is precluded by res judicata from seeking to compel construction of a Central Park entrance, because she previously sued for that relief and lost. She, together with others, commenced an Article 78 proceeding in November 2003 against the Museum, officials of the Museum, and officials of the City. The petition alleged, among other claims, that the Museum was then legally obligated to build a Central Park entrance. The petition was dismissed by a Decision and Order of this Court in 2004. [Application of Metropolitan Museum Historic District, 787 NYS2d 679 (Sup Ct, NY County 2004)]. Ms. Nicholson unsuccessfully appealed that decision. Her appellate brief did not attempt to demonstrate error in this Court's disposition of the Central Park entrance claim, and the Appellate Division found that claim to have been abandoned. [Met. Museum Historic Dist. Coalition v De Montebello, 20 AD3d 28, 34 (1st Dept 2005)].
See Dkt. 51 at 8.

Footnote 8:This cause of action is only asserted by Nicholson.


Footnote 9:The Saska Plaintiffs, on an individual basis only, released their claims for monetary damages.See Saska Action, Dkt. 67 at 5. The Grunewald Plaintiffs do not object to them doing so.


Footnote 10:There are other changes that do not merit discussion at this juncture, such as in section 1, where the definition of the Settlement Class is changed to the extent that the words "paid for" are substituted for the word "purchased", and in section 15(d), where there is a slight change in how the staff training portion of the consent decree is phrased. See Saska Action, Dkt. 116 at 3, 13. It should be noted that the exhibits to the Amended Settlement Agreement are filed in the Saska Action as Dkt. 117-125. It also should be noted that the Saska Plaintiffs' proposed order granting preliminary approval of the Amended Settlement Agreement contains the wrong settlement class definition (i.e., the definition from the Original Settlement Agreement). See Saska Action, Dkt. 118 at 2. When a new proposed order is submitted, the correct definition must be used.


Footnote 11:The court will not address the Grunewald Plaintiffs' accusations regarding the Museum's management, such as their complaints about the way in which the Museum is operated and the compensation paid to its executives, the latter of which, allegedly, is a reason the Museum charges admission. No evidence is proffered in support of these accusations, and, as explained herein, they have no legal relevance to the issues in this case.


Footnote 12:In Saska I, the court explained that "[a]dmission to the Museum is de facto free for all" because "[a]ll members of the public can afford to visit the Museum under the present [admission policy]. For those without means, or those who do not wish to express their gratitude financially, a de minimis contribution of a penny is accepted." See Saska I, 42 Misc 3d at 557.


Footnote 13:Some of the complaints are akin to a shareholder derivative complaint about the excessive compensation of a company's executives. Even if such allegations had some, remote relevance to a public trust claim, the conclusory (and inflammatory) nature in which the allegations are asserted would fall woefully short of stating a valid claim for waste.


Footnote 14:The standard requires the court to analyze the "five prerequisites to class certification" set forth in CPLR 901(a), which "are commonly referred to as the requirements of numerosity, commonality, typicality, adequacy of representation and superiority" [see Maul, 14 NY3d at 508], and then determine if the settlement is "fair, adequate and in the best interests of the class." Rosenfeld v Bear Stearns & Co., 237 AD2d 199, 199 (1st Dept 1997); see generally In re Colt Indus. S'holder Lit., 155 AD2d 154 (1st Dept 1990), aff'd as mod. 77 NY2d 185 (1991). Moreover, at the final approval stage, "[w]here, as here, a class is [sought to be] certified for settlement purposes only, [the CPLR 901(a)] prerequisites demand undiluted, even heightened, attention." See Jiannaras v Alfant, 124 AD3d 582, 590 (2d Dept 2015), aff'd 27 NY3d 349 (2016), quoting Klein v Robert's Am. Gourmet Food, Inc., 28 AD3d 63, 69 (2d Dept 2006), quoting Amchem Prods., Inc. v Windsor, 521 US 591, 620 (1997). 


Footnote 15:Indeed, both in their original complaint and in their AC, the Grunewald Plaintiffs ask for injunctive relief, not damages.


Footnote 16:It also should be noted that, while the court will not rule on the amounts sought by the Saska Plaintiffs and their counsel until the hearing on final approval, the court rejects the Saska Plaintiffs' contention [see Saska Action, Dkt. 113] that the current version of CPLR 909 now expressly permits incentive awards for class representatives. CPLR 909, which was amended after the Court of Appeals' decision in Flemming v Barnwell Nursing Home & Health Facilities, Inc., 15 NY3d 375 (2010), now provides:
If a judgment in an action maintained as a class action is rendered in favor of the class, the court in its discretion may award attorneys' fees to the representatives of the class and/or to any other person that the court finds has acted to benefit the class based on the reasonable value of legal services rendered and if justice requires, allow recovery of the amount awarded from the opponent of the class.
(emphasis added). Hence, while CPLR 909 provides for representatives and objectors to recover attorneys' fees, it does not provide for a separate cash award. While some judges in this court have approved incentive awards [see, e.g., Chowdhury v GK Grill LLC, 2015 WL 8488817, at *3 (Sup Ct, NY County 2015); Lopez v The Dinex Group, LLC, 2015 WL 5882842, at *3 (Sup Ct, NY County 2015)], this court has reservations about doing so. As Justice Bransten recently noted, "[a]s for the $5,000 service awards requested by the Class Representatives, CPLR § 909 does not authorize such so-called 'incentive awards.'" See In re HSBC Bank U.S.A., N.A., Checking Account Overdraft Lit., 49 Misc 3d 1211(A), at *10 (Sup Ct, NY County 2015) (emphasis added). Justice Bransten further explained:
Since the awards are not available as a matter of New York law, Plaintiffs' requests for awards are deemed warranted to the extent that they seek reasonable compensation for time and effort expended on behalf of the class. In the light of the above observations, incentive awards are not foreclosed, but any award will be limited to the time and effort expended in litigating the matter.
See id. (citations and quotation marks omitted; emphasis added). With this context in mind, the court expects the parties to provide a more thoughtful and robust position at the final approval stage if they want the court to consider approving the incentive awards. The issue is not whether they deserve to be compensated or whether this court believes the availability of such awards are good public policy, but only whether such awards are permitted by statute.